# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-08-00517-CV

Lisa Caufmann, Appellant

v.

Elsie Schroer, as Trustee of The Elsie R. Schroer Survivor's Trust, UTD,
September 22, 1997, formerly known as The Schroer Family Revocable Trust, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-GN-03-001201, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Lisa Caufmann[1] appeals from the trial court's judgment against her for failure to make payments on a note. Caufmann and her husband, Thomas Caufmann, executed a real estate lien note for a principal amount of $150,000 that was assigned to Elsie Schroer as trustee of the Elsie R. Schroer Survivor's Trust ("the Trust"). The Caufmanns made only $4,500 in payments on the note. Schroer sued the Caufmanns, obtaining an interlocutory default judgment against Thomas Caufmann. Schroer's claim against Lisa Caufmann was tried to the trial court, which entered judgment in favor of Schroer. On appeal, Caufmann argues that the trial court erred in concluding that the note was supported by consideration and that the court could consider extrinsic

---

[1] For the purposes of this opinion, the use of "Caufmann" refers to Lisa Caufmann only. Any references to Thomas Caufmann will state his full name.

evidence in determining the consideration for the note.  We affirm the judgment of the trial court.

## BACKGROUND

On August 16, 1995, Thomas Caufmann and a business associate, Anthony Eddolls, executed a promissory note to Max and Elsie Schroer in the amount of $150,000 with an interest rate of eighteen percent ("the 1995 Note").[2]  The records custodian for the Trust testified that $150,000 was transferred to Thomas Caufmann in exchange for the 1995 Note and that no complaint regarding disbursement of the funds was ever received.  The note was due in its entirety within two years, with $50,000 of the principal due after one year of the date of the note and the remainder due after two years of the date of the note.[3]

Two years later, however, the only payments that had been received on the 1995 Note were interest payments; none of the principal had been repaid.  On January 26, 1998, Thomas Caufmann and his then-wife, appellant Lisa Caufmann,[4] executed a real estate lien note for $150,000 at a rate of zero percent interest ("the 1998 Note"). The 1998 Note was mailed to the Schroers with a letter, which though unsigned stated that it was from Thomas and Lisa Caufmann ("the

---

[2]  At the time of the making of the 1995 Note, the Trust was known as the Schroer Family Revocable Trust. The Schroer family includes Elsie, the trustee of the current Trust; Max, Elsie's husband, who died in 1997; Myron, Elsie and Max's son, who is Elsie's agent; and Cindy, Myron's wife, who serves as the records custodian of the Trust.

[3]  The facts recited herein are from the testimony and exhibits admitted at trial.

[4]  The Caufmanns divorced in February 2002.  Lisa Caufmann testified that she would often sign documents if Thomas Caufmann told her to do so, because he would sometimes physically strike her if she refused.  However, she also testified that she signed the 1998 Note voluntarily, and does not assert on appeal that her signature was coerced.

1998 Letter"). [5]  The letter indicated that the Caufmanns could not afford to make payments on the 1995 Note, [6] and sought to substitute the 1998 Note for the 1995 Note.  The letter indicated that the Caufmanns planned to sell off property that they owned, details of which were specified in a third document included in the mailing, in order to make payments on the 1998 Note.  The letter also stated that monthly payments on the 1998 Note would begin April 15, 1998.

The Schroers responded with a letter dated May 30, 1998, accepting the 1998 Note and indicating that it would be assigned to Elsie Schroer. [7]  The letter referenced a conversation with the Caufmanns regarding the terms of the 1998 Note and stated, "We look forward to receiving June 1st payment as you indicated."  A total of $4,500 was paid on the 1998 Note before payments ceased.

In 2002, Myron Schroer, Elsie's son and agent, had several conversations with Lisa Caufmann regarding delinquent payments on the 1998 Note.  Lisa Caufmann indicated that she would raise the matter with Thomas Caufmann; however, additional payments were not forthcoming.  Consequently, Elsie Schroer brought a suit on a sworn account to recover the balance due on the 1998 Note with interest.  After a bench trial, the trial court entered judgment in favor of Elsie

---

[5]  Lisa Caufmann testified that she had never seen the letter dated January 26, 1998, before testifying at trial.  She stated that her husband would "constantly" send out letters in her name without informing her of what he was doing.  She also testified that she has been involved in many lawsuits involving the finances of her husband, who was investigated by the FBI for his financial dealings.  In addition, she testified that she had been named an "innocent spouse" by the IRS with regard to the couple's finances.

[6]  The letter explained that the failure to make payments on the 1995 Note was due in part to lack of contributions from Anthony Eddolls.  According to the letter, Eddolls was preparing to file for bankruptcy.

[7]  The 1998 Note was initially made out to beneficiaries Myron and Cindy Schroer.

3

Schroer and issued findings of fact and conclusions of law. This appeal followed.

## STANDARD OF REVIEW

Caufmann challenges the trial court's second and seventh conclusions of law, which respectively state that the 1998 Note was supported by adequate consideration and that the court could consider extrinsic evidence in evaluating the consideration for the 1998 Note.[8] We review the trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although an appellant may not challenge a trial court's conclusions of law for factual sufficiency, we may review the trial court's legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.*

## DISCUSSION

### Extrinsic Evidence

We begin with Caufmann's fourth issue on appeal, as its resolution informs the analysis of Caufmann's remaining issues. In her fourth issue, Caufmann argues that the trial court impermissibly concluded that extrinsic evidence could be used in evaluating the 1998 Note. Specifically, Caufmann argues that use of the 1998 Letter to determine the consideration supporting

---

[8] These two conclusions of law are properly categorized as legal questions. Regarding the trial court's second conclusion of law, "[w]hat constitutes consideration for a contract is a question of law," and the "issue concerning a failure of that consideration is also a legal one within the province of the trial court." *Peat Marwick Main v. Haass*, 775 S.W.2d 698, 706 (Tex. App.—San Antonio 1989), *rev'd on other grounds*, 818 S.W.2d 381(Tex. 1991). Regarding the trial court's seventh conclusion of law, the admissibility of extrinsic evidence to determine the terms of a written instrument is governed by the legal question of whether the instrument is ambiguous as a matter of law. *Estes v. Republic Nat'l Bank*, 462 S.W.2d 273, 275 (Tex. 1970).

the 1998 Note violated the parol evidence rule.

The parol evidence rule is not a rule of evidence, but rather is a rule of substantive contract law. *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 32 (Tex. 1958). The rule functions as an evidentiary rule barring admission of extrinsic evidence which seeks to vary, add to, or contradict the terms of a written agreement. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). Accordingly, extrinsic evidence of the parties' intent is not admissible to vary the terms of an otherwise unambiguous instrument. *Estes v. Republic Nat'l Bank*, 462 S.W.2d 273, 275 (Tex. 1970). For extrinsic evidence of the parties' intent to be admissible, the instrument must first be ambiguous as a matter of law. *Id.*

We examine, then, whether the 1998 Note is ambiguous. A contract is not ambiguous if its wording permits a definite or certain legal meaning.[9] *DeWitt County Elec. Co-op, Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). A contract is ambiguous if, after applying established rules of construction, its meaning is uncertain and doubtful, or the writing is reasonably susceptible to more than one meaning. *Id.* Lack of recital of consideration renders a contract ambiguous. *See Vass v. Fisher*, 405 S.W.2d 866, 867 (Tex. Civ. App.—Houston [1st Dist.] 1966, no writ).[10] In such cases, "if not expressed, consideration may be implied by or inferred from the terms and obvious

---

[9] As "[a] promissory note is nothing more than a contract evincing an obligation to pay money," we turn to principles of contract law to evaluate the 1998 Note. *See Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

[10] We note that lack of recital of consideration is not "fatal" to the existence of a contract, as in Texas "[i]t is the general rule that a consideration for a contract need not be recited or expressed in the writing." *Vass v. Fisher*, 405 S.W.2d 866, 867 (Tex. Civ. App.—Houston [1st Dist.] 1966, no writ).

5

import of the contract, or it may be proved by parol evidence." *Id.* (citation and quotation omitted).

The 1998 Note expresses no consideration. While the note specifies a principal amount of $150,000, the note does not recite the particular consideration given for the principal amount.[11] Accordingly, the note is ambiguous as a matter of law, and the trial court could properly consider extrinsic evidence, including the 1998 Letter, in determining the terms of the agreement.[12] As the trial court did not err in concluding that extrinsic evidence could be considered in evaluating

---

[11] Though the 1998 Note includes a promise to pay the principal amount of the note, the promise does not resolve the issue of the consideration given for the note. *See Suttles v. Thomas Bearden Co.*, 152 S.W.3d 607, 610, 615-16 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (considering parol evidence to determine consideration for note despite promise to pay principal amount on face of note); *see also Wilson & Wilson Tax Servs. v. Mohammed*, 131 S.W.3d 231, 237 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that wire transfer that promised payment of $200,000 was "silent as to what consideration supports [it]").

[12] In its fourth conclusion of law, the trial court stated that the 1998 Note and the 1998 Letter could be read together as a single agreement. We disagree. When interpreting a contract, all executed instruments pertaining to the same transaction will be construed together in order to determine the intent of the parties. *See World Help v. Leisure Lifestyles*, 977 S.W.2d 662, 676 (Tex. App.—Fort Worth 1998, pet. denied) (explaining that "where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other"). However, while "an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged," if the unsigned document is not specifically referenced in the executed instrument, it cannot be considered. *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968); *see also Teal Constr. Co. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex. App.—Austin 2001, pet. denied) (noting that, when incorporating unsigned writing, "[t]he specific language used is not important so long as the contract signed by the defendant plainly refers to another writing").

In this case, while the 1998 Note is an executed instrument, the 1998 Letter is not, as it bears no signature. Accordingly, the letter can only be incorporated into the contract if the 1998 Note, an executed instrument, specifically references it. As the 1998 Note is silent with regard to any additional explanatory documents, the 1998 Letter cannot be read in conjunction with the 1998 Note. We note, however, that as we conclude that the 1998 Letter constitutes admissible extrinsic evidence of the terms of the agreement, the fact that the 1998 Note and 1998 Letter cannot be read together as a single document does not impact our holding in this case.

the consideration supporting the 1998 Note, Caufmann's fourth issue is overruled.

*Consideration*

Caufmann's first, second, and third issues on appeal challenge the trial court's conclusion of law that the 1998 Note was supported by adequate consideration. "Consideration is defined as 'either a benefit to the promisor or a loss or detriment to the promisee.'" *Northern Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998) (quoting *Receiver for Citizen's Nat'l Assurance Co. v. Hatley*, 852 S.W.2d 68, 71 (Tex. App.—Austin 1993, no writ)). A promissory note given "for value" is supported by adequate consideration and is therefore enforceable. *Suttles v. Thomas Bearden Co.*, 152 S.W.3d 607, 615 (Tex. App.—Houston [1st Dist.] 2004, no pet.). A promissory note is issued for "value" if it is issued as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due. *Id.*; *see also Ward v. Vaughn*, 298 S.W.2d 862, 866-67 (Tex. Civ. App.—Galveston 1957, no writ) (explaining that forbearance of antecedent debt was sufficient consideration for note).

After examining the 1998 Note in conjunction with the extrinsic evidence of the 1998 Letter and the 1995 Note, we agree with the trial court that the 1998 Note is supported by adequate consideration. The 1998 Note is clearly intended to replace a preexisting obligation, the 1995 Note. The 1998 Letter refers to a prior "Promissory Note." The 1998 Letter indicates that the prior note was co-signed by Anthony Eddolls, just as the 1995 Note was. The 1998 Letter explains that the Caufmanns "cannot continue to pay the original note amounts @ 18% interest," which conforms to the interest rate on the 1995 Note. The 1998 Letter states that the Caufmanns "are enclosing a new note, based on the principal amount" of the prior note, and the enclosed 1998 Note

7

recites the same principal amount as the 1995 Note (but at a rate of zero percent interest).

Under this analysis, the consideration for the 1998 Note is the forgiveness of the prior obligations incurred under the 1995 Note. Such forgiveness of an antecedent debt constitutes proper consideration.

Caufmann argues, however, that consideration for the 1998 Note failed because the principal amount was never received. Failure of consideration occurs when, "after an agreement has been reached, the promised performance fails." *Bassett v. American Nat'l Bank*, 145 S.W.3d 692, 696 (Tex. App.—Fort Worth 2004, no pet.) (holding that failure to pay amount promised by note constituted failure of consideration). In this case, Caufmann bases her argument on the fact that neither she nor Thomas Caufmann received the $150,000 in principal specified by the 1998 Note. Such an argument presupposes that the consideration for the note was the listed principal amount. Our analysis above, however, indicates that the consideration supporting the 1998 Note was not the principal amount stated in the note, but instead the forgiveness of the 1995 Note.[13] As Caufmann presented no evidence that Elsie Schroer attempted to collect on or otherwise enforce the 1995 Note after the receipt of the 1998 Note, there is no basis for a defense of failure of consideration in this case.

Accordingly, as we conclude that the 1998 Note was supported by consideration, Caufmann's first, second, and third points of error are overruled.

---

[13] Caufmann does not argue that the $150,000 principal amount that served as consideration for the 1995 Note was not received.

**CONCLUSION**

Because we find no reversible error, we affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   February 26, 2010