**Tracy SUTTLES and TS—Clare, Inc., Appellants,**

v.

**THE THOMAS BEARDEN COMPANY, Appellee.**

No. 01–02–01077–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 22, 2004.

Rehearing and En Banc Rehearing Overruled Jan. 10, 2005.

Scott Douglas Cunningham, Cunningham Law Firm, Houston, TX, for Appellant.

Joe Steven Stewart, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and HIGLEY.

## OPINION ON MOTION FOR REHEARING

LAURA CARTER HIGLEY, Justice.

Appellee, The Thomas Bearden Company ("TBC") has filed a motion for rehearing and first supplemental motion for rehearing. We grant rehearing, withdraw our opinion of February 26, 2004, issue this new opinion in its stead, and vacate our February 26, 2004 judgment.

This is an appeal from a summary judgment in favor of TBC and against appellants, Tracy Suttles and TS—Clare, Inc. ("TS—Clare"). At issue in this case is appellants' liability on a promissory note. Appellants raise eight issues on appeal: (1) whether the trial court erred in granting TBC's motion for partial summary judgment as to Suttles, (2) whether the trial court properly construed a facially unambiguous promissory note, (3) whether the trial court, if the promissory note was ambiguous, failed to recognize material fact issues arising from the competing interpretations, (4) whether Suttles can be held individually liable on the promissory note, (5) whether material fact issues existed with respect to the capacity in which Suttles signed the promissory note, (6) whether Business and Commerce Code, subsection 3.402(b)(1) governed the promissory note, (7) whether the promissory note is void and unenforceable under Revised Civil Statute article 6573a sections 20 and 26, and (8) whether material fact issues existed as to the consideration supporting the promissory note.

We reverse and remand as to Tracy Suttles but affirm as to TS—Clare, Inc.

### Facts & Procedural History

On June 28, 1999, Suttles signed a one-page promissory note payable to TBC in the principal amount of $250,000. The note stated, in relevant part, as follows:

FOR GOOD AND VALUABLE CON-SIDERATION, the undersigned Borrowers, jointly and severally, do hereby promise to pay to **Thomas Bearden**[1] (Lender), the amount of **$250,000**, together with interest accrued at the rate of **7%** percent [sic] per annual [sic]. Said amount is to be payable in **36** installments of Interest Only, the first of which is due on or before **25th** of August, and following payments to be made on the **25th** of each Month.[2]

Suttles signed the note twice. His first signature appeared below the typed written body of the note as follows:

Gessner Partners Ltd.____[3]

TS Clare, Inc., General Partner

Tracy Suttles, President

/s/ *Tracy Suttles*

Borrower

In an empty space at the bottom of the page, the parties wrote a handwritten amendment to the note. Suttles again signed below the handwritten amendment, as did Bruce Ripper, the president of TBC. The amendment and parties' signatures appeared on the note as follows:

> *Interest will accrue from Oct 17, 1997. A $50,000 principal payment will be due June 28, 2000.*
>
> /s/ *Bruce Ripper*
> /s/ *Tracy Suttles*

On September 14, 2000, TBC gave appellants notice that the note was in default and demanded payment in the total sum of $290,523.18. On November 9, 2001, TBC sued on the note, naming Suttles, NBC Properties, Inc., TS—Clare, and Gessner as defendants. On March 8, 2002, TBC requested a partial summary judgment on its claims against both TS—Clare and Suttles. The trial court granted TBC's motion for partial summary judgment against both TS—Clare and Suttles on July 9, 2002, after which TBC dismissed its remaining claims, making the partial summary judgment final.

## Standard of Review

A traditional summary judgment under Rule 166a(c) is proper only when the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). In reviewing a summary judgment, we indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor. *Johnson*, 891 S.W.2d at 644; *Lawson v. B Four Corp.*, 888 S.W.2d 31, 33 (Tex.App.-Houston [1st Dist.] 1994, writ denied). We take all evidence favorable to the non-movant as true. *Johnson*, 891 S.W.2d at 644; *Lawson*, 888 S.W.2d at 33. When, as here, a summary judgment does not state the specific grounds on which it was granted, a party appealing from the judgment must show that each of the independent arguments alleged in the motion is insufficient to support the judgment. *Smith v. Houston Lighting & Power Co.*, 7 S.W.3d 287, 290 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

## Liability on the Promissory Note

In their first six issues on appeal, appellants contend that the trial court erred in finding Business and Commerce Code, subsection 3.402(b)(1) did not shield Sut-

---

**1.** Although the note identified "Thomas Bearden" as the payee, the actual payee was "The Thomas Bearden Company."

**2.** Bolded emphases in original.

**3.** Gessner Partners, Ltd. ("Gessner") was a limited partnership in which TS—Clare served as the general partner. Suttles was president of TS—Clare.

tles from liability on the note. Specifically, appellants assert that the face of the note unambiguously showed that Suttles signed solely in his representative capacity as the president of TS—Clare; therefore, subsection 3.402(b)(1) relieved him of liability. In response, TBC contends that subsection 3.402(b)(1) is not applicable to the note because (1) TS—Clare was not "identified" in the instrument and (2) the note was ambiguous with regard to whether appellant signed solely in a representative capacity.

■ To prevail on a motion for summary judgment to enforce a promissory note, a plaintiff must establish that (1) a note exists, (2) the plaintiff is the legal owner and holder of the note, (3) the defendant is the maker of the note, and (4) a certain balance remains due and owing on the note. *Blankenship v. Robins*, 899 S.W.2d 236, 238 (Tex.App.-Houston [14th Dist.] 1994, no writ). To prove that the defendant is the maker of the note, the plaintiff must present summary judgment

evidence indicating that the defendant's signature appears on the note or that a representative of the defendant signed the note on the defendant's behalf.[4]

■ Even if it is shown that a defendant signed as the maker of a note, the defendant may nevertheless escape liability if the signature was made in a representative capacity. TEX. BUS. & COM.CODE ANN. § 3.402 (Vernon 2003). Indeed, if Business and Commerce Code, subsection 3.402(b)(1) applies to a note, the signatory is not liable as a matter of law.[5] *Id.* § 3.402(b)(1). Subsection 3.402(b)(1) provides as follows:

(b) If a representative signs the name of the representative to an instrument and the signature is an authorized signature of the represented person, the following rules apply:

(1) If the *form of the signature* shows *unambiguously* that the signature is made on behalf of the repre-

---

4. A person is not liable on an instrument unless the person (1) signed the instrument; or (2) is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under Business and Commerce Code, section 3.402. TEX. BUS. & COM.CODE ANN. § 3.401(a) (Vernon 2003).

5. In 1995, the Texas Legislature revised this provision of the Business and Commerce Code. Under the old code, representative liability was covered under section 3.403 as follows:

(b) An authorized representative who signs his own name to an instrument

(1) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity.

(2) except as otherwise established between the immediate parties, is personally obligated if the instrument names other person represented but does not show that the representative *signed* in a representative ca-

pacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(c) *Except as otherwise established* the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

Act of September 1, 1967, 60th Leg., R.S., ch. 785, § 3.403, 1967 Tex. Gen. Laws 2343, 2423 (amended 1995) (current version at TEX. BUS. & COM.CODE ANN. § 3.402 (Vernon 2003)) (emphasis added).

The legislature's decision to omit the language in subsection 3.4039(c) when drafting revised section 3.402 indicates its intent to provide for a conclusive presumption that a representative is not personally liable when the representative signs his name together with his representative capacity and the represented person's name. *Compare* TEX. BUS. & COM.CODE ANN. § 3.402(b)(1) *with* Act of September 1, 1967, 60th Leg., R.S., ch. 785, § 3.403, 1967 Tex. Gen. Laws 2343, 2423 (amended 1995).

sented person who is *identified in the instrument,* the representative is not liable on the instrument. *Id.* (emphasis added).

■ To determine the applicability of subsection 3.402(b)(1), we primarily consider the words used in the statute itself. *See Cities of Austin, Dallas, Fort Worth, and Hereford v. Southwestern Bell Tel. Co.,* 92 S.W.3d 434, 442 (Tex.2002). However, we may also consider the object to be attained by the statute, the circumstances surrounding the statute's enactment, legislative history, former statutory and common law, and the consequences of a particular construction. *Id.*

■ The words used in an enactment shall be interpreted in their ordinary sense, unless they are given a specific statutory definition. *Osterberg v. Peca,* 12 S.W.3d 31, 38 (Tex.2000). We will also presume that the legislature used every word of a statute for a purpose. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981). We avoid construing a statutory provision in isolation from the rest of the statute, considering the act as a whole and not just single phrases, clauses, or sentences. *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985).

■ In the instant case, as president of the corporation, Suttles was a representative of TS—Clare. Relatedly, the parties do not dispute Suttles's authority to bind TS—Clare to the note. The note, itself, shows that TS—Clare was identified in the signature block of the instrument. Also, the signature block identified Suttles as president of TS—Clare. We conclude that, when Suttles signed the note's signa-

ture block, he did so as an authorized representative of TS—Clare. We further conclude that TS—Clare was identified in the instrument and that the form of the signature block showed unambiguously that Suttles's signature was made on behalf of TS—Clare.

■ We disagree with TBC's contention that the "represented person" (*i.e.,* TS—Clare) was not identified in the note. Although TS—Clare was never mentioned in the body of the note, it was identified in the signature block in which Suttles signed. Subsection 3.402(b)(1) merely requires that the principal be identified "in the instrument." Tex. Bus. & Com.Code Ann. § 3.402(b)(1). There is no requirement that the principal be identified in the body of the note.[6] *See id.* We conclude that the identification of TS—Clare within the note's signature block was sufficient "identification" under section 3.402(b)(1).

We also disagree with TBC's contention that the form of Suttles's signature failed to show unambiguously that the signature was made solely on behalf of TS—Clare. We find the three ambiguities identified by TBC to be unpersuasive.

First, TBC directs this Court's attention to the body of the note, which refers to multiple borrowers and provides for joint and several liability among such borrowers. This, TBC contends, is inconsistent with the notion that only Gessner—and thus TS—Clare as its general partner—was meant to be liable on the note, thereby creating ambiguity as to the capacity in which appellant signed. However, under subsection 3.402(b)(1), we do not look to the note as a whole to discern whether representative capacity was ambiguous;

---

**6.** Uniform Commercial Code Comment 2 states that "if the form of the signature unambiguously shows that it is made on behalf of an identified represented person (for example, 'P, by A, Treasurer'), the agent is not liable."

Tex. Bus. & Com.Code Ann. § 3.402 cmt. 2. We construe the example given by the commentators to allow for the identification of a represented party in a signature block.

we look only to the "form of the signature" to insure that the signature, itself, unambiguously shows representative capacity. *See id.* This analysis is more limited than that provided for under former section 3.403—which directed courts to look to the "instrument" to determine representative capacity—but is required to give effect to the changed language of the statute.[7] *Compare* Act of September 1, 1967, 60th Leg., R.S., ch. 785, § 3.403, 1967 Tex. Gen. Laws 2343, 2423 (amended 1995) *with* TEX. BUS. & COM.CODE ANN. § 3.402(b)(1).

Second, TBC contends that the signature block does not unambiguously show that Suttles signed in a representative capacity because "although [Suttles] is identified as 'President,' his signature does not indicate that he is signing for TS–Clare, Inc. This could easily have been done by including the word 'by' in front of his signature." The comments to section 3.402 indicate that the revisions made to former section 3.403 were for the purpose of providing further protection to agents who sign negotiable instruments in their representative capacity. TEX. BUS. & COM. CODE ANN. § 3.402 cmt. 2. Thus, in drafting the new provision, the legislature moved away from case law under the former provision that interpreted section 3.403 to require an obsequious adherence to a specific signature form. *Id.* As the drafters state in the comments to the new provision

> The approach followed by former Section 3–403 was to specify the form of signature that imposed or avoided liability. This approach was unsatisfactory. There are many ways in which there can be ambiguity about a signature. It is

better to state a general rule. Subsection (b)(1) states that if the form of the signature unambiguously shows that it is made on behalf of an identified represented person (for example, "P, by A, Treasurer") the agent is not liable. This is a workable standard for a court to apply.

*Id.* We conclude that, under revised section 3.402, a preposition was not required to show Suttles's representative capacity; it was enough that the signature identify TS—Clare, Suttles, and the capacity in which Suttles signed on behalf of TS—Clare.

Finally, TBC contends that "the handwritten interlineations on the note are consistent with an interpretation of individual liability in that there is no indication of representative capacity whatsoever." However, the signatures below the handwritten amendment to the note are neither consistent nor inconsistent with any theory of representative capacity.

Normally, a signature and any accompanying words are considered an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. TEX. BUS. & COM.CODE ANN. § 3.204(a) (Vernon 2003).

In the instant case, both the placement of the signatures as well as the words accompanying them suggest that the signatures were merely an attempt by the parties to indicate on the face of the note that the handwritten portion thereof was

---

**7.** TBC asserts that the revised language of the statute indicates the legislature's intent that "one no longer looks solely at the form of the signature as previously required by former § 3.403." However, this assertion mistakes the intended effect of the revision. Comment 2 to section 3.402 makes clear that, although

revised section 3.402 does away with the requirement that a signature take a specific form, it nonetheless limits the scope of our analysis to the form of the signature when determining representative capacity. *See* TEX. BUS. & COM.CODE ANN. § 3.402 cmt. 2.

an authorized amendment to the original terms of the note. They do not suggest that either Suttles or Bruce Ripper meant to become liable on the note as indorsers by means of such signatures. Given the limited purpose for which the parties signed, we conclude that Suttles's failure to indicate his representative capacity when signing below the handwritten amendment neither made him individually liable on the note nor created ambiguity with regard to his signature on behalf of TS—Clare.

We conclude that TBC has failed to show either that TS—Clare was not identified in the note or that the form of Suttles's signature was ambiguous as to his representative capacity.

We hold that, as a matter of law, appellant's signature on the note did not make him individually liable on the note, pursuant to Business and Commerce Code, subsection 3.402(b)(1); therefore, the trial court erred in granting summary judgment as to Tracy Suttles.

We sustain appellants' first six issues on appeal.

### Enforceability of Promissory Note

■ In their seventh and eighth issues on appeal, appellants contend that the trial court erred in granting summary judgment because they presented sufficient summary judgment evidence to raise a material fact issue concerning their affirmative defense of failure of consideration.

Once a plaintiff establishes its right to summary judgment as a matter of law, the burden then shifts to the defendant as nonmovant to present evidence that raises a genuine issue of material fact, thereby precluding summary judgment. *Parker v. Dodge*, 98 S.W.3d 297, 299 (Tex.App.-Houston [1st Dist.] 2003, no pet.). A plaintiff who conclusively establishes the ab-

sence of a disputed fact issue will not be prevented from obtaining summary judgment merely because the defendant has pleaded an affirmative defense. *Wilson v. Gen. Motors Acceptance Corp.*, 897 S.W.2d 818, 823 (Tex.App.-Houston [1st Dist.] 1994, no writ). An affirmative defense will prevent summary judgment only if the defendant comes forward with summary judgment evidence sufficient to raise an issue of material fact on each element of the defense. *Parker*, 98 S.W.3d at 300.

■ The defense of failure of consideration defeats summary judgment if the nonmovant alleges facts and presents evidence that the consideration in the agreement was not received. *Stewart v. U.S. Leasing Corp.*, 702 S.W.2d 288, 290 (Tex.App.-Houston [1st Dist.] 1985, no writ). Generally, failure of consideration occurs when, because of some supervening cause after an agreement is reached, the promised performance fails. *Id.* A complete failure of consideration constitutes a defense to an action on a written agreement. *Parker*, 98 S.W.3d at 301.

■ Under common law, as long as something of real and legally cognizable value is given in exchange for a promise to pay under a promissory note, the note is supported by adequate consideration. *See, e.g., Windham v. Alexander, Weston & Poehner, P.C.*, 887 S.W.2d 182, 184 (Tex. App.-Texarkana 1994, writ denied). Similarly, under the Uniform Commercial Code, a promissory note is issued for "value" if it is issued as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due. TEX. BUS. & COM.CODE ANN. § 3.303(a)(3) (Vernon 2003). If the note is issued for value, consideration exists. *Id.*

In the instant case, appellants contend that summary judgment was improper because the parties proffered contradictory summary judgment evidence as to the con-

sideration for the note in question. Specifically, appellants contend that the evidence raised a material fact issue as to whether the obligation that was evidenced by the note was a loan or payment of a real estate commission. If the obligation was for payment of a real estate commission, appellants assert that the note was void for lack of adequate consideration because they were not obligated to pay TBC a real estate commission under the Real Estate License Act.

To determine whether a fact issue was raised as to the consideration supporting the note, we must look to the summary judgment evidence introduced by the parties.

In support of its motion for summary judgment, TBC introduced the sales contract from the real estate transaction underlying this dispute, which provided that NBJ Houston, Inc. ("NBJ")[8] would pay TBC a brokerage commission of $446,250. TBC also filed the affidavit of Bruce Ripper, its president. Ripper's affidavit gave the following version of the events leading up to the execution of the note at issue:

2. This case arises from a real estate transaction in which Suttles purchased three apartment buildings located on Gessner Boulevard in Houston, Texas (the "Gessner Property").

3. In 1997, NBJ owned the Gessner Property. It wanted to sell and various real estate brokers attempted to locate a buyer. One of these brokers was TBC. [TBC] had represented Suttles on previous transactions. He introduced Suttles to [NBJ] as a potential purchaser for the Gessner Property. . . .

4. After this introduction, [NBJ] and Suttles negotiated and on June 25, 1997 entered into written contracts for the purchase and sale of each of the Gessner properties. On September 3, 1997, these contracts were merged into one agreement entitled Amended and Restated Agreement of Sale and Purchase.

. . . .

6. The contract provided that Suttles would purchase the Gessner Property for the consideration of $13,825,000.00 cash at closing. It also provided that NBJ, as seller, would pay to TBC an aggregate commission equal to $446,250.00. . . .

7. Suttles obtained financing for the purchase through a third party lending institution named Berkshire Mortgage which agreed to lend $12,000,000.00 or approximately 86% of the purchase price to Suttles.

8. Suttles was unable to obtain enough cash to cover the remaining portion of the purchase price and the deal was about to fold. To save the deal, he approached [NBJ] and TBC for money. Both agreed to help Suttles get the money and close the deal.

9. [NBJ] agreed to contribute capital to Suttles through two means. First, NBJ–Houston, Inc. made three loans to Suttles in the aggregate sum of $1,274,072.82. The sum of $1,000,000.00 was credited to Suttles from the amounts due NBJ from the closing. The additional sum of $274,072.82 was represented by two loan agreements and such funds were transferred by

---

**8.** NBJ originally owned the properties made the basis of the real estate transaction underlying this dispute. NBJ sold the properties to Gessner.

NBJ to Suttles outside of the closing of the Gessner Property. Second NBJ–Houston, Inc. agreed to purchase an initial 15% interest in a limited partnership called Gessner Partners, Ltd. ("Gessner") for $200,000.00. Gessner was created to take title to the Gessner Property. Tracy Suttles held an ownership interest of 84% of Gessner and the corporation TS–Clare, Inc. was named general partner with an interest of 1%. NBJ–Houston, Inc. also agreed to purchase an interest in another limited partnership called Houston Oakridge Apartments, L.P. for the sum of $50,000.00. This limited partnership held title to other property not connected with the Gessner Property. These funds were credited to Suttles from the amounts received by NBJ as seller at closing.

10. For its part, TBC agreed to loan to Suttles the sum of $378,000.00 from its total commission of $446,250.00. These funds were credited to Suttles from the brokerage received by TBC at closing.

The note at issue evidences that the money owed by appellants to TBC was in connection with the $378,000 loaned to appellants for the purpose of purchasing the "Gessner Property."

In response to TBC's motion for summary judgment, appellants filed the affidavit of Tracy Suttles. Suttles's affidavit provided, in pertinent part, as follows:

3. The Note arises out of The Thomas Bearden Company's ("Bearden") attempt to document a commission for the sale of real estate it claimed in connection with a certain transaction involving the sale of real estate.

. . . .

6. During the formation of Gessner and prior to October 16, 1997, [TBC] said that [it] felt like he deserved a commission for procuring [NBJ], a business prospect, in connection with the sale of NBJ's real estate to Gessner. Ripper wanted a 3% commission for helping to put the deal together. Gessner does not have a written commission agreement with TBC or Ripper. TBC received some of its claimed commission at the time of closing. However, TBC did not receive approximately $250,000 of the commission it claimed in connection with the Gessner sale at the time of closing on October 16, 1997.

7. Ripper later attempted to document the $250,000 he believed TBC was owed as a commission by having Gessner execute the Note. Ripper came to my office nearly two years after the Gessner deal closed, complaining that he had not received payment on the alleged commission agreement. The Note is the product of that conversation.

We conclude that the summary judgment evidence presented by appellants (i.e., Tracy Suttles's affidavit) did not raise a material issue of fact concerning each issue of appellants' affirmative defense. Appellants presented nothing to contradict the clause in the sales contract providing that NBJ—not appellants—was responsible for payment of the brokerage commission to TBC. Moreover, Suttles's vague statements in his affidavit failed to show that the obligation evidenced by the note was in return for TBC's brokerage services. Instead, the summary judgment evidence indicates that TBC merely loaned appellants money that TBC was owed by NBJ as a brokerage commission. Although the $378,000 TBC loaned appellants was earned by TBC as a brokerage

commission, the source from which the money was derived has no effect on the value appellants received from the loan.

We hold that appellants' summary judgment evidence failed to raise a material issue of fact concerning their affirmative defense of failure of consideration.

We overrule appellants' seventh and eighth issues on appeal.

### Conclusion

Having held that, as a matter of law, Tracy Suttles could not be held individually liable on the basis of his signature on the note, and having further held that appellant failed to present sufficient summary judgment evidence to raise a material question of fact as to each element of their affirmative defense of failure of consideration, we reverse and remand the summary judgment as to Tracy Suttles but affirm the summary judgment as to TS—Clare.