Affirmed and Memorandum Opinion
filed July 1, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00652-CV



Packard
Transport, Inc. and Packard Logistics, Inc., Appellants 

v.

Michael W.
Dunkerly, Individually and d/b/a Checkmate Priority Express, a/k/a Top Priority
Express, and Priority Express, Inc., Appellees 



On Appeal from
the 80th District Court

Harris County, Texas

Trial Court
Cause No. 2005-17693



 

M E M O R A N D U M   O P I N I O N


This is a suit on a promissory note.  Appellants,
Packard Transport, Inc. and Packard Logistics, Inc. (collectively “Packard”),
filed suit against appellees, Michael W. Dunkerly, Individually (“Dunkerly) and
d/b/a/ Checkmate Priority Express, a/k/a/ Top Priority Express (“Top Priority”),
and Priority Express, Inc. (“Priority Express, Inc.”), alleging that they were
jointly and severally liable for the balance on a promissory note.  After a
bench trial, the trial court rendered judgment in favor of Packard against
Priority Express, Inc. for the balance due on the promissory note but rendered
judgment that Packard take nothing against Dunkerly.  Packard now appeals from
the take nothing judgment in favor of Dunkerly.  We affirm.

I.  BACKGROUND

Packard was in the freight transport business and
often contracted with various shippers to transport freight.  In 1998, Packard entered
into an agency agreement with “Top Priority Express.”  Dunkerly signed the
agreement on behalf of Top Priority Express, indicating that he was the owner of
the company.  At the time, Dunkerly was the vice president of a corporation, Priority
Express, Inc.; he also conducted business under an assumed name, Top
Priority Express.  The agency agreement with Packard did not reflect
whether Top Priority Express was the corporation (Priority Express, Inc.) or Dunkerly’s
business under his assumed name (Top Priority Express).  Under the agency
agreement, Top Priority Express agreed to solicit, pick up, dispatch, and
document freight transports.  In return, Packard agreed to collect payment from
the original shippers and pay Top Priority Express a weekly commission on each
completed transport. 

After executing the agency agreement, Dennis
Hockabout, an employee of Top Priority Express, engaged in certain fraudulent
acts.   Responsible for transporting various loads, Hockabout forged mileage
computations and freight delivery orders.  For a short period of time
thereafter, Packard did not verify the delivery orders and did not collect
payment in advance from the shippers on the freight transports.  Accordingly,
Packard paid Top Priority Express unearned commissions based on Hockabout’s
forged delivery orders and mileage computations.  When Packard subsequently
attempted to collect payment on the fraudulent transports, the shippers refused
to pay either because the mileage computation was inaccurate, the delivery was
never made, or the load never existed.  Thereafter, Packard filed suit to
recover the unearned commissions.

A.  2001 Lawsuit and Promissory Note

In 2001, Packard filed suit against Dunkerly d/b/a
Checkmate a/k/a Top Priority Express to recoup the commissions paid on the
fraudulent transports.  Ultimately, the 2001 lawsuit was settled; part of the
settlement included Packard’s accepting a promissory note in the amount of
$33,000.00.  The payor of the note was identified as “Top Priority Express,
Inc.,” and the note was signed by Dunkerly.  He signed in the following manner:

/s/ Michael
Dunkerly, Vice-president (handwritten)

Michael
Dunkerly (typewritten), Vice-president 

of Priority Express, Inc. (handwritten)

The note was executed in 2003, and the relevant terms
provided that the payor would pay $1,000 a month to Packard until the
$33,000.00 balance was paid.  Thirteen payments were made before there was a
default on the note; the last two payments were returned for insufficient
funds.  Packard filed a second lawsuit, now seeking to collect the unpaid
balance on the promissory note.

B.  The Underlying Lawsuit 

In 2005, Packard filed suit against:  (1) Dunkerly,
individually; (2) Dunkerly under his assumed name, Top Priority; and (3) the
corporation, Priority Express, Inc.  Packard alleged that all three defendants were
liable on the 2003 note.  Packard’s suit was tried to the court, during which the
parties agreed that the payor had defaulted on the note and Priority Express,
Inc. was liable for the unpaid balance.  However, the parties contested
Dunkerly’s personal liability on the note.  Packard argued that Dunkerly was
personally liable because the 2001 lawsuit did not name Priority Express, Inc.
as a defendant: Dunkerly, under his assumed names, was the only named defendant. 
According to Packard, because Dunkerly was the only named defendant in the 2001
lawsuit—out of which the note arose—Dunkerly was personally liable on the note.

  In contrast, Dunkerly argued that he was not
personally liable on the note because:  (1) Priority Express, Inc. was the
maker of the note; (2) Dunkerly signed as the vice-president of Priority
Express, Inc.; and (3) there was no indication on the note that Dunkerly
intended to be personally liable.  Ultimately, the trial court rendered
judgment in favor of Packard against Priority Express, Inc. for the balance due
on the promissory note.  The trial court further rendered judgment that Packard
take nothing against Dunkerly.  Packard now appeals from the take nothing
judgment in favor of Dunkerly.

C.  Appellate Arguments

In seven related arguments, Packard contends that the
trial court erred in rendering its take nothing judgment in favor of Dunkerly. 
Packard claims that Dunkerly is personally liable on the note based on the
following arguments: (1) the original contract is unambiguous; (2) the
promissory note, as typewritten, is unambiguous; (3) the first lawsuit
correctly identified Dunkerly by his assumed name Top Priority Express; (4) the
promissory note was delivered as part of the settlement of the first lawsuit;
(5) Dunkerly made 13 payments on the note; (6) the alleged scrivener’s error—Inc.—on
the note did not render the note ambiguous; and (7) the signature, indicating
Dunkerly was the vice-president of the payor—does not render the note ambiguous. 
We construe Packard’s arguments as a challenge to the legal and factual
sufficiency of the evidence to support the trial court’s take nothing judgment
against Dunkerly.

II.  STANDARD OF REVIEW 

In conducting a legal sufficiency review of the
evidence, a court must consider all of the evidence in the light most favorable
to the verdict and indulge every reasonable inference that would support it.  City
of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  In determining
whether there is legally sufficient evidence to support the finding under
review, we must consider evidence favorable to the finding if a reasonable
factfinder could and disregard evidence contrary to the finding unless a
reasonable factfinder could not.  Cent. Ready Mix Concrete Co. v. Islas,
228 S.W.3d 649, 651 (Tex. 2007); City of Keller, 168 S.W.3d at 802,
827.  We may sustain a legal sufficiency challenge only when (1) the record
discloses a complete absence of evidence of a vital fact; (2) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact; (3) the evidence offered to prove a vital fact
is no more than a mere scintilla; or (4) the evidence establishes conclusively
the opposite of a vital fact.  City of Keller, 168 S.W.3d at 810 (citing
Robert W. Calvert, “No Evidence” and “Insufficient Evidence Points of Error,”
38 Tex. L Rev. 361, 362–63 (1960)); O and B Farms, Inc. v. Black, 300
S.W.3d 418, 420 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  

When reviewing an assertion that the evidence is
factually insufficient to support a finding, we set aside the finding only if,
after considering and weighing all of the evidence in the record pertinent to
that finding, we determine that the evidence supporting the finding is so weak,
or so contrary to the overwhelming weight of all the evidence, that the answer
should be set aside and a new trial ordered.  See Dow Chemical Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001); Thomas v. Uzoka, 290 S.W.3d
437, 452 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  In an appeal from
a bench trial, we do not invade the fact-finding role of the trial court, which
alone determines the credibility of witnesses, the weight to give their
testimony, and whether to accept or reject all or any part of that testimony.  See
Thomas, 290 S.W.3d at 452–53. 

III.  PERSONAL LIABILITY ON PROMISSORY NOTE

To prove that the defendant is the maker of a note,
the plaintiff must prove that the defendant’s signature appears on the note or
that a representative of the defendant signed the note on the defendant’s
behalf.  Suttles v. Thomas Bearden Co., 152 S.W.3d 607, 611 (Tex.
App.—Houston [1st Dist.] 2004, no pet.).  Even if it is shown that a defendant
signed as the maker of a note, the defendant is not liable on the note if the
signature was made in a representative capacity.  See id.; Mestco
Distributs., Inc. v. Stamps, 824 S.W.2d 678, 680 (Tex. App.—Houston [14th
Dist.] 1992, no pet.) (under previous representative liability statute, “a
signature is established as being in a representative capacity if it has the
name of an organization proceeded or followed by an authorized individual’s
name and office”); see also Tex. Bus. & Com. Code Ann. § 3.402(b)
(Vernon 2002).[1] 
Under section 3.402, a signatory signing in a representative capacity is not personally
liable as a matter of law.  Suttles, 152 S.W.3d at 611 (“[I]f Business
and Commerce Code, subsection 3.402(b)(1) applies to a note, the signatory is
not liable as a matter of law.”).  Section 3.402 provides in relevant part:

(b) If a representative signs the name of the
representative to an instrument and the signature is an authorized signature of
the represented person, the following rules apply:

            (1) If the form of the signature shows unambiguously
that the signature is made on behalf of the represented person who is identified
in the instrument, the representative is not liable on the instrument.  

Tex. Bus. & Com. Code
Ann. § 3.402(b).  Accordingly, section 3.402 applies in the instant case if
Dunkerly’s signature was authorized and the signature unambiguously shows that
it was made on behalf of Top Priority Express, Inc.  See id.  Packard primarily
disputes whether the signature unambiguously shows that it was made on behalf
of Top Priority Express, Inc.  In addressing this issue, we look only to the
“form of the signature” to insure that the signature unambiguously shows
representative capacity.  Suttles, 152 S.W.3d at 612–13; see also
Tex. Bus. & Com. Code Ann. § 3.402(b).  

In this case, Dunkerly signed in the promissory note
in the following manner:

/s/ Michael
Dunkerly, Vice-president (handwritten)

Michael
Dunkerly (typewritten), Vice-president 

of Priority Express, Inc. (handwritten)

            The note shows
that Dunkerly was identified in the signature block of the instrument. 
Additionally, in handwritten text, the signature block identified Dunkerly as
vice-president of Priority Express, Inc. and Dunkerly wrote next to his
signature “Vice-president.”  Looking only to the form of the signature, we
conclude that the identification of Dunkerly within the note’s signature block
was sufficient “identification” under section 3.402(b)(1).  The form of the
signature unambiguously identifies Dunkerly as the corporation’s authorized
representative, and the form of the signature block unambiguously shows
Dunkerly’s signature was made on behalf of Priority Express, Inc.  Accordingly,
as a matter of law, Dunkerly was not personally liable on the promissory note. 
See Suttles, 152 S.W.3d at 611; see also Tex. Bus. &
Com. Code Ann. § 3.402(b).

Moreover, we reject Packard’s argument that the facts
surrounding the 2001 lawsuit and Dunkerly’s payments on the note prove
Dunkerly’s personal liability on the note.  As explained above, we look only to
the form of the signature in determining representative capacity.  Suttles,
152 S.W.3d at 612–13; see also Tex. Bus. & Com. Code Ann. §
3.402(b).  Because the form of the signature unambiguously shows that Dunkerly
signed in a representative capacity, we reject Packard’s argument.  We also
reject Packard’s argument that the suffix, Inc., after Priority Express in the
signature block on the note is a scrivener’s error.  A scrivener’s error is an
error resulting from a minor mistake or inadvertence, especially in writing.  See
Black’s Law Dictionary 582 (8th ed.  2004).  Here, Packard agrees that the note
is unambiguous, and there is nothing in the signature block or note to suggest
that the Inc. suffix is a scrivener’s error.  In fact, the first paragraph of
the note identifies the payor as “Top Priority Express, Inc.”  

            We hold, as a
matter of law, that Dunkerly’s signature on the note did not make him personally
or individually liable pursuant to section 3.402.  Therefore, we overrule
Packard’s arguments and affirm the trial court’s taking nothing judgment
against Dunkerly.   

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Anderson and Christopher.

 









[1]
In 1995, the Texas Legislature revised the representative liability statute.  The
previous statute, covered under section 3.403 of the Business and Commerce Code,
provided in relevant part:

(b) An authorized representative who signs his own
name to an instrument

            (1)  is personally obligated if the
instrument neither names the person represented nor                                   shows
that the representative signed in a representative capacity;

(2)  except
as otherwise established between the immediate parties, is personally obligated
if the instrument names the person represented but does not show that the
representative signed in a representative capacity, or if the instrument does
not name the person represented but does show that the representative signed in
a representative capacity.

(c)  Except as
otherwise established the name of an organization preceded or followed by the
name and office of an authorized individual is a signature made in a
representative capacity.  

Act of September 1, 1967, 60th
Leg., R.S., ch. 785, § 3.403, 1967 Tex. Gen. Laws 2343, 2423 (amended 1995)
(current version at Tex. Bus. & Com. Code Ann. § 3.402  (Vernon 2002)).