**Affirmed and Memorandum Opinion filed August 15, 2013.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-12-00547-CV

---

## TED TROUT ARCHITECT & ASSOCIATES, LTD., Appellant

## V.

## DR. MARTIN BASALDUA, Appellee

---

**On Appeal from County Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Cause No. 1000782**

---

## MEMORANDUM OPINION

In this suit to recover on a promissory note, Ted Trout Architect & Associates, Ltd. ("Trout") contends that the trial court erroneously granted summary judgment in favor of Dr. Martin Basaldua because (1) there is no evidence to support the summary judgment; (2) Basaldua's statute of limitations argument cannot support summary judgment; and (3) summary judgment cannot be supported "on the grounds that [Basaldua] did not sign the Promissory Note,

because this is a breach of contract case." We affirm.

## Factual and Procedural Background

Trout provided architectural services to Greater North Houston Physicians Alliance, Ltd. ("GNHPA") for the construction of a hospital. Trout filed an architect's lien after GNHPA failed to pay for Trout's services. On June 8, 2006, Basaldua, as CEO of GNHPA, signed a Letter Agreement of Settlement and Modification of Contract. The Letter Agreement provided that, "[a]t the closing of GNHPA's anticipated new development loan, but in no event later than ninety days from date hereof, unless otherwise agreed, GNHPA will pay Trout the sum of $400,000.00 and deliver an unsecured promissory note payable in one installment of $50,000.00 . . . being due and payable on September 16, 2008."

There seems to be no dispute that a $400,000.00 check was delivered to Trout as required by the Letter Agreement. Further, a promissory note was delivered to Trout; the note stated: "Northeast Houston Hospital Ltd., a Texas limited partnership, promises to pay to the order of Ted Trout & Associates the sum of Fifty Thousand and no/100 ($50,000.00) Dollars . . . . The indebtedness evidence hereby shall be due and payable on the 16th day of September ("Maturity Date")." The date of delivery is unclear because the promissory note states at the top right-hand corner "As of April 16, 2006," and a handwritten notation on the note states "Orig. mailed to client 10/26/06." The promissory note was signed as follows:

NORTHEAST HOUSTON HOSPITAL, LTD.
By: Northeast Houston GP, L.P.,
    its General Partner
    By: NE Houston GP
        Management, LLC,

2

its General Partner

By: T Gallagher

Name: Tom Gallagher

Title: President

The note also stated: "This obligation is made and intended as a Tennessee contract and is to be so construed."

Trout sued Basaldua, GNHPA, North East Houston Hospital, Ltd., North East Houston General Partnership, L.P., and North East Houston General Partnership Management, LLC on September 14, 2011, to recover on the unpaid promissory note. In its original petition, Trout alleged that the promissory note matured on September 16, 2008, but "[t]he maker's [sic] of the note refused to pay it. On March 31, 2009, a notice and demand for payment was served on the appropriate responsible entities more than thirty days prior to filing this lawsuit." Trout "further assert[ed] his rights under Senate Bill 323 which added new section 101.002, which incorporates by reference the corporate veil-piercing standards set forth in Sections 21.223 through 21.226 of the TOBC." Trout sued for $50,000 in damages from the named defendants for nonpayment of the promissory note and attorney's fees.

Basaldua filed an answer on December 22, 2011, generally denying Trout's allegations and contending that Trout's claims against him are barred (1) by the applicable statute of limitations; (2) because Basaldua is not liable in the capacity in which he has been sued; and (3) because Basaldua "denies the person(s) who executed the promissory note at issue had any authority to execute the promissory note on Dr. Basaldua's behalf."

Basaldua also filed a traditional motion for summary judgment on December 22, 2011. He first argued that the trial court may apply Texas law regarding his

3

claim on the promissory note because Tennessee law "identified in the contract does not differ from the substantive law of Texas." Basaldua also argued that he is entitled to summary judgment because he did not sign or make the promissory note, and because no representative of Basaldua signed the note on his behalf.

Basaldua further contended that he is not liable for the obligations of (1) North East Houston Hospital, Ltd. because he is a limited partner and does not participate in the control of the business; (2) North East Houston GP, L.P., or North East Houston GP Management, LLC because he "is not, and has never been, affiliated with or an officer, director, or member of" these two entities; and (3) GNHPA GP, LLC[1] because he is a member only of GNHPA GP, LLC and thus not liable for its debts, even assuming that GNHPA GP, LLC "assumed the liabilities of Northeast Houston Hospital when GNHPA GP became its general partner."

Basaldua lastly argued that, "[i]f Trout complains that the Letter Agreement required Dr. Basaldua, through GNHPA, to make and deliver a promissory note instead of Northeast Houston Hospital, Trout's claim for the alleged breach of the Letter Agreement is time-barred" because a breach of contract claim is subject to a four year statute of limitations. According to Basaldua, the Letter Agreement required GNHPA to deliver a promissory note "'in no event later than ninety days from date thereof;'" therefore, any cause of action "Trout may have had against GNHPA for any alleged failure to make and deliver a promissory note as set forth under the Letter Agreement accrued September 7, 2006, the ninety-first day from the date of the Letter Agreement and the date of the alleged breach."

Trout filed its first amended petition on January 25, 2012. The amended

---

[1] Basaldua stated in his summary judgment motion that he is a member of GNHPA GP, LLC, and that GNHPA GP, LLC "became the general partner of Northeast Houston Hospital after Northeast Houston Hospital made the" promissory note.

petition mirrored Trout's original petition and added a claim for breach of contract; the petition stated, "Trout pleads the settlement agreement constituted a new or modified contract between the parties." The petition further stated that the defendants promised and delivered a promissory note for $50,000, and "[w]hen the note matured, Trout demanded payment thereof – Defendants' [sic] breached their contract by failing and refusing to pay the note as agreed."

On the same day, Trout filed a response to Basaldua's summary judgment motion. Trout argued that the trial court may not apply Texas law in this case because "the court would be re-writing and/or altering the parties' intent and purposes set forth in the contract, which the court is not empowered to do." Trout did not argue that Texas law and Tennessee law differ in any respect with regard to this case. Trout also argued that a question of fact exists regarding whether (1) Basaldua and "his partners" are responsible for payment of the note because Basaldua signed the Letter Agreement "authorizing the note;" and (2) "the signatories on the note were merely accommodation makers, or new players in the game."

Trout further contended that the applicable four-year statute of limitation with regard to a breach of the Letter Agreement is found in section 16.004 of the Texas Civil Practice and Remedies Code and not in section 16.051. Finally, Trout contended that, because the note was issued on April 16, 2006, and matured on September 16, 2008, the "Texas four year limitation period ran from September 16, 2008 to September 16, 2012," and Trout timely filed its lawsuit on September 24, 2011.

Basaldua filed a reply to Trout's summary judgment response on January 28, 2012, objecting to some of Trout's summary judgment evidence. Basaldua further argued that there are no conflicts between Texas and Tennessee law, allowing the

trial court to apply Texas law in this case and, in particular, the Texas four-year statute of limitations. Basaldua reiterated his previously asserted argument that any cause of action Trout may have had for any alleged failure of GNHPA to make and deliver a promissory note accrued on September 7, 2006, which is the ninety-first day from the date of the Letter Agreement and the alleged breach. According to Basaldua, Trout's claim for breach of the Letter Agreement is time-barred because he failed to bring the claim by September 7, 2011, and "Trout's attempt to use the maturity date of the Note—a separate written agreement—is misplaced."

Basaldua also argued that Trout failed to present any evidence that contradicted his summary judgment evidence. According to Basaldua, Trout did not present any evidence to (1) contradict Basaldua's affidavit in which he asserted that he did not participate in Northeast Houston Hospital Ltd.'s control or act as its general partner; (2) show that Basaldua had any relationship with North East Houston GP, L.P. or North East Houston GP Management, LLC; and (3) demonstrate that Basaldua participated in the control of GNHPA.

The trial court signed a judgment on March 16, 2012, granting Basaldua's summary judgment motion and dismissing Trout's claims with prejudice. Trout filed a notice of nonsuit on April 3, 2012, without prejudice with regard to "his cause of action for breach of contract and other damages against Co-Defendants Greater North Houston Physicians Alliance, Ltd. (defunct), Greater North Houston Medical Alliance. Ltd., North East Houston Hospital, Ltd., North East Houston General GP, L.P., and North East Houston GP Management, LLC." The trial court signed the notice on April 5, 2012.

Trout filed a motion for new trial on May 4, 2012, arguing that the trial court erred by granting summary judgment because (1) Trout filed suit within the applicable four-year statute of limitations based on the note's maturity date; and

6

(2) Basaldua is personally liable for payment of the promissory note (a) under Texas Business Organizations Code section 153.102 because he "participated in control of the business, and he negotiated and signed the Settlement Agreement as the CEO of GNHPA, Ltd.," and (b) because Texas Civil Practice and Remedies Code section 17.022 provides that "Citation served on one member of a partnership authorizes a judgment against the partnership and the partner actually served."

Trout also contended that summary judgment was erroneously granted because there is no evidence to support Basaldua's summary judgment motion. In particular, Trout contended that "[n]one of the allegations and/or conclusions stated therein, or the exhibits attached thereto are admissible evidence because the proffered exhibits are not certified copies, nor sworn to, or otherwise authenticated, and therefore have no evidentiary value to support his motion." Trout added Basaldua's personal affidavit "has no evidentiary value because it is merely a personal disclaimer of any affiliation with NE Houston GP Management, LLC, and Northeast Houston GP, L.P., neither of which were parties to the Settlement Agreement made the basis of this lawsuit. Absent a properly authenticated affidavit, and properly authenticated exhibits, there was no evidence before the court supporting the summary judgment granted."

Basaldua filed a response to Trout's motion for new trial on May 11, 2012, and the trial court signed an order denying Trout's motion for new trial on May 16, 2012. Trout filed a timely notice of appeal on June 12, 2012.

### Standard of Review

A traditional summary judgment is appropriate under Texas Rule of Civil Procedure 166a(c) when a movant establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A trial court's grant of traditional summary judgment is reviewed

7

*de novo* on appeal. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). An appellate court examines "the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). When the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Seber v. Union Pac. R.R.*, 350 S.W.3d 640, 645 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

**Analysis**

**I.     Summary Judgment Evidence**

In its first issue, Trout argues that summary judgment exhibits A through F are inadmissible and incompetent evidence to support Basaldua's summary judgment motion. Trout argues that Basaldua's affidavit does not authenticate any of the exhibits Basaldua attached to his summary judgment motion and that the affidavit is not based on personal knowledge. Trout concludes that none of Basaldua's proffered exhibits will support his summary judgment motion because "they are either (1) not sworn or authenticated documents; or (2) not certified documents; or (3) are irrelevant to the issues presented and therefore have no evidentiary value to support Basaldua's motion."

Trout did not complain that the attached exhibits have "no evidentiary value to support" Basaldua's summary judgment motion before the trial court granted summary judgment; Trout made this argument for the first time in its motion for new trial.

With regard to exhibits A and B, Trout states in its appellate brief: "Exhibit

A – Promissory Note that is not certified, sworn, or authenticated. Exhibit B – Letter Agreement of Settlement and Modification Of Contract that's not certified, sworn to or otherwise authenticated." Basaldua's summary judgment exhibits A and B are copies of the Letter Agreement and promissory note that Trout had attached to its original petition; the copies are not sworn, certified, or authenticated.

Trout attached copies of the Letter Agreement and promissory note to the affidavit of Ted Trout, which it attached to its summary judgment response. In the affidavit, Ted Trout avers that a true and correct copy of the Letter Agreement is attached to his affidavit as an exhibit, and an "identical copy of the same document is attached to [Basaldua's summary judgment motion] as Exh. B." In the affidavit, Ted Trout also avers that "[a]ttached to this affidavit is a true and correct copy of the original note." Therefore, the Letter Agreement and the promissory note were properly before the trial court and have probative value.

With respect to exhibit C, Trout states in its brief: "Exhibit C – Affidavit Of Martin Basaldua in which (1) he qualifies himself to make the affidavit; (2) qualifies his partnership status in NEHH, Ltd., and denies any affiliation with the NE Houston GP Management, L.L.C." Trout argues that Basaldua's affidavit has "no evidentiary value to support" his summary judgment motion because it does not authenticate any of the documents attached to his motion, and it "makes no reference to any exhibit attached to his motion." However, an affidavit need not necessarily authenticate documents or reference exhibits attached to a summary judgment motion in order to have probative value. An affidavit has probative value beyond document authentication.

Trout also argues that, although Basaldua stated in his affidavit that he has personal knowledge of the facts and statements contained in his affidavit, the

9

affidavit does not affirmatively show that Basaldua had personal knowledge. An affidavit's failure to affirmatively show it was based upon personal knowledge of a witness competent to testify is a defect of form which requires an objection in the trial court in order to preserve error for review. *Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990); *see also Wash. DC Party Shuttle, LLC v. IGuide Tours, LLC*, No. 14-12-00303-CV, 2013 WL 3226768, at *8-10 (Tex. App.—Houston [14th Dist.] June 27, 2013, no pet. h.) (en banc) (litigant must object and obtain a ruling from the trial court to preserve a complaint that an affidavit fails to reveal the basis for the affiant's personal knowledge of the facts state therein). Trout made no objection in the trial court that Basaldua's affidavit is defective because it does not affirmatively show that Basaldua had personal knowledge of the facts and statements contained in the affidavit. Trout therefore waived any defect in the form of Basaldua's affidavit, and the affidavit is not denied probative value. *See Vaughan*, 792 S.W.2d at 945.

With regard to exhibit D, Trout states: "Exhibit D – A Certificate of Fact certifying registration of the NEHH, Ltd. with the Secretary of State. (Note: This entity is not a party to this lawsuit)." Exhibit D is a Certificate of Fact issued by the Texas Secretary of State on December 21, 2011; it states that "The undersigned, as Secretary of State of Texas, does hereby certify that the document, Certificate of Formation for Northeast Houston Hospital, Ltd. (file number 800628924), a Domestic Limited Partnership (LP), was filed in this office on March 17, 2006. It is further certified that the entity status in Texas is in existence." Exhibit D is properly self-authenticated pursuant to Rule of Evidence 902(1); it contains the seal of the State of Texas and the signature of the Secretary of State. *See* Tex. R. Evid. 902(1) (providing for self-authentication when domestic public documents are under seal).

10

With regard to exhibit E, Trout states: "Exhibit E – A Certificate of Fact certifying that GNHPA GP, LLC is registered with the Secretary of State and naming Martin Basaldua." Exhibit E is a certified copy of a Certificate of Formation for GNHPA GP, LLC issued by the Secretary of State on December 21, 2011. It states that "The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below: GNHPA GP, LLC[,] Filing Number: 800627046[,] Certificate of Formation[,] March 15, 2006." Exhibit E is generally admissible under Rule of Evidence 902(4) because it consists of a certified copy of a public record, certified as correct by its custodian, and, therefore, self-authenticating. *See* Tex. R. Evid. 902(4) (providing for self-authentication of certified copies of public records).

With regard to exhibit F, Trout states: "Exhibit F – A copy of Plaintiff's Original Petition." Trout makes no further argument regarding exhibit F and does not explain why this exhibit is inadmissible. Trout presents nothing for our review. *See* Tex. R. App. P. 38.1(i).

We overrule Trout's first issue.

## II.    Liability on the Promissory Note

In his third issue, Trout argues the trial court erroneously granted summary judgment "predicated on Basaldua's argument that he is not personally liable for payment of the note because he did not sign it." Trout argues that Basaldua is personally liable for the payment of the promissory note because Basaldua negotiated and signed the Letter Agreement with Trout as a party to the Letter Agreement and as the CEO of GNHPA, Ltd. Trout states that Basaldua is "subject to personal liability for payment of the note" as a matter of law pursuant to Texas Business Organization Code section 153.102(a)(1) and (b). Trout argues that

11

"Basaldua was the person with whom Trout negotiated – no one else. Whether Basaldua was a limited partner or a general partner is a question of fact, because he signed the [Letter] Agreement as CEO, which suggests he was more than an uninterested limited partner."

Trout sued Basaldua for nonpayment of the promissory note. Trout did not sue Basaldua for breach of the Letter Agreement.

To collect on a promissory note, a plaintiff must establish (1) there is a note; (2) the plaintiff is legal owner and holder; (3) the defendant is the maker; and (4) a certain balance is "due and owing." *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 324 (Tex. App.—Houston [14th Dist.] 2011, no pet.). There is no dispute that there is a note; that Trout is the legal owner of the note; and that the note is "due and owing." The dispute centers around whether Basaldua is the maker of the note and is personally liable for payment of the note. To prove that the defendant is the maker of the note, there must be evidence indicating that the defendant's signature appears on the note or that a representative of the defendant signed the note on the defendant's behalf. *Suttles v. Thomas Bearden Co.*, 152 S.W.3d 607, 611 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

The summary judgment evidence conclusively establishes that Basaldua did not sign the promissory note, and that no representative signed it on his behalf. The promissory note provides that Northeast Houston Hospital, Ltd., a Texas limited partnership, promises to pay Trout $50,000 by September 16, 2008. The note is signed as follows:

NORTHEAST HOUSTON HOSPITAL, LTD.
By: Northeast Houston GP, L.P.,
    its General Partner
    By: NE Houston GP

12

> Management, LLC,
>
> its General Partner
>
> By: *T Gallagher*
>
> Name: *Tom Gallagher*
>
> Title: *President*

The summary judgment evidence thus establishes that Basaldua did not sign the promissory note; rather, the note was signed by Tom Gallagher as President of NE Houston GP Management, LLC, which is the general partner of Northeast Houston GP, L.P., which in turn is the general partner of Northeast Houston Hospital, Ltd. Trout also acknowledges in its brief that Basaldua did not sign the promissory note but that Gallagher signed it.

Additionally, nowhere in the note is there any indication that Gallagher signed the note as Basaldua's representative on behalf of Basaldua; nor is there any mention of Basaldua anywhere in the note. Further, Basaldua averred in his affidavit: "[A]t all relevant times herein, I have been a limited partner of Northeast Houston Hospital, Ltd. . . . I am not, and have never been, a general partner of Northeast Houston Hospital. I have never participated in the control of Northeast Houston Hospital in addition to my rights and powers as a limited partner of Northeast Houston Hospital." Basaldua also averred that he has never been affiliated with or acted as an officer, director, or member of NE Houston GP Management, L.L.C., and has never been affiliated with or acted as an officer, director, general partner, or limited partner of Northeast Houston GP, LP. The record does not reveal any controverting evidence. The evidence establishes that neither Tom Gallagher nor any of the other entities referenced on the promissory note signed the note as Basaldua's representative on behalf of Basaldua.

Trout argues that section 153.102(a)(1), (b) of the Texas Business Organizations supports his argument that Basaldua is personally liable on the

13

promissory note. Section 153.102 provides:

> (a) A limited partner is not liable for the obligations of a limited partnership unless:
>
>> (1) the limited partner is also a general partner; or
>>
>> (2) in addition to the exercise of the limited partner's rights and powers as a limited partner, the limited partner participates in the control of the business.
>
> (b) If the limited partner participates in the control of the business, the limited partner is liable only to a person who transacts business with the limited partnership reasonably believing, based on the limited partner's conduct, that the limited partner is a general partner.

Tex. Bus. Orgs. Code Ann. §153.102(a)(1), (b) (Vernon 2012).

As we have stated, the promissory note was signed by Tom Gallagher as President of NE Houston GP Management, LLC, which is the general partner of Northeast Houston GP, L.P. In turn, this entity is the general partner of Northeast Houston Hospital, Ltd. Basaldua stated in his affidavit that, at all relevant times, he (1) has been a limited partner of Northeast Houston Hospital, Ltd.; (2) has never been a general partner of Northeast Houston Hospital, Ltd.; (3) has never participated in the control of Northeast Houston Hospital, Ltd.; and (4) has never been affiliated with Houston GP Management, L.L.C. or Northeast Houston GP, LP. There is no evidence to the contrary. Based on the evidence before us, section 153.102 does not support Trout's argument that Basaldua is personally liable on the promissory note.

We also reject Trout's contention that Basaldua is personally liable on the promissory note because he negotiated and signed the Letter Agreement "as a party" and as the CEO of GNHPA, Ltd.

Basaldua's position in GNHPA, Ltd. is irrelevant in this case. Trout did not sue Basaldua for breach of the Letter Agreement, which was entered into between

14

Trout and GNHPA, Ltd. Nor was there a breach of the Letter Agreement because Trout acknowledged in his live pleading that, "[i]n addition to the initial $400,000.00 payment, the defendants promised and in fact delivered a promissory note for $50,000.00" as required by the Agreement. Trout sued Basaldua for nonpayment of the promissory note, in which Northeast Houston Hospital, Ltd., and not GNHPA, Ltd. or Basaldua, promised to pay Trout $50,000. The Letter Agreement and the promissory note are separate contracts.[2] The fact that Basaldua signed the Letter Agreement as GNHPA's CEO does not make him personally liable for the payment of the promissory note, which is a separate contract that Northeast Houston Hospital, Ltd. promised to pay.

We conclude that the trial court did not err in granting summary judgment on the ground that Basaldua is not personally liable for payment of the promissory note. We overrule Trout's third issue.[3]

### Conclusion

We affirm the trial court's judgment.

/s/ William J. Boyce
Justice

Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.

---

[2] "A promissory note is a contract evincing an obligation to pay money." *DeClaire v. G & B McIntosh Family Ltd. P'ship*, 260 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

[3] We need not address Trout's argument regarding whether the trial court erroneously granted summary judgment on the ground that Trout's claim is barred by the statute of limitations. When the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *Urena*, 162 S.W.3d at 550; *Seber*, 350 S.W.3d at 645.