**Cathy Towns DANN, Appellant,**

v.

**TEAM BANK, Appellee.**

**No. 05–89–00055–CV.**

Court of Appeals of Texas,
Dallas.

March 30, 1990.

Joseph J. Mastrogiovanni, Jr., Dallas, for appellant.

Nathan Allen, Jr., Martin R. Wiarda, Dallas, for appellee.

Before WHITHAM, ROWE and BAKER, JJ.

## OPINION

ROWE, Justice.

Cathy Towns Dann appeals from a summary judgment entered in favor of Team Bank, f/k/a Deposit Guaranty Bank, on a guaranty. In two points of error, Dann contends that the trial court erred in granting the Bank's motion for summary judgment and in denying her motion for summary judgment. We overrule both points of error and affirm the judgment of the trial court.

Cetcon Corporation executed a deed of trust in the principal amount of $550,000 payable to the Bank of Dallas. At the same time, Dann signed a guaranty in the amount of $550,000, together with interest, penalty fees, and expenses, including attorney fees. Dann signed the guaranty as follows:

Cathy Towns Dann (handwritten)

Cathy Towns Dann (typewritten)

President (handwritten)

Cetcon Corporation (handwritten)

Subsequently, the Federal Deposit Insurance Corporation was appointed receiver for the Bank of Dallas. In a purchase and assumption agreement, the FDIC transferred certain assets to Team Bank, including the Cetcon deed of trust and guaranty. Upon failure of Cetcon to make the required quarterly interest payment, the bank accelerated the note, notifying both Cetcon and Dann. When payment was not received, the bank foreclosed on the subject property, which was sold at public auction for $350,000. After all credits and offsets, the remainder owed was $271,353.83. The bank sued Dann and Cetcon for this amount. The trial court granted the bank's motion for summary judgment and entered judgment against Dann and Cetcon. Only Dann appealed.

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 592–93 (Tex.1975); TEX.R. CIV.P. 166a(c). In our review of the summary judgment evidence, we must follow the standards enunciated in *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex.1985):

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant must be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and doubts resolved in his favor.

*Id.* at 548–49. Also, the movant is confined to the specific ground set forth in the motion. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979); TEX.R.CIV.P. 166a(c).

The thrust of Dann's appeal is that she is not liable in her individual capacity under the guaranty. We disagree.

A guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform. *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 114 (Tex.1978); *Fourticq v. Fireman's Fund Ins. Co.*, 679 S.W.2d 562, 564 (Tex.App.—Dallas 1984, no writ). In *Pittinger v. Southwestern Paper Co.*, 151 S.W.2d 922, 924 (Tex.App.—Fort Worth 1941, no writ), guaranty was defined as an undertaking by one to another to answer for the payment of a debt, incurred by a named person, in case of the failure of that person to pay. *See also Cook v. Citizens*

*Nat'l Bank,* 538 S.W.2d 460, 462 (Tex.App. —Beaumont 1976, no writ). For there to be a guarantor, there must be a primary obligation on the part of another, the performance of which is guaranteed. *Moore v. Grain Dealers Mut. Ins. Co.,* 450 S.W.2d 954, 957 (Tex.App.—Houston [1st Dist.] 1970, no writ). Under normal circumstances, a written collateral undertaking given to secure a corporate debt will be rendered meaningless if the primary debtor is found to be the sole party liable thereunder. *American Petrofina Co. v. Bryan,* 519 S.W.2d 484, 487 (Tex.App.—El Paso 1975, no writ). To circumvent this result, the corporate designations appearing after signatures on documents of this type are considered to be only descriptio personae. *Id.* at 487. Descriptio personae is the use of a word or phrase merely to identify or point out the person intended and not as an intimation that the language in connection with which it occurs is to apply to him only in the technical character which might appear to be indicated by the word. *Neeley v. Intercity Management Corp.,* 623 S.W.2d 942, 948 (Tex.App.—Houston [1st Dist.] 1981, no writ).

This guaranty involved three parties: (1) the Bank, (2) Cetcon, and (3) Dann. A guaranty requires three parties because it creates a secondary obligation whereby the guarantor promises to answer for the debt of another. *See Republic Nat'l Bank,* 578 S.W.2d at 114. Here, Dann promised to answer for the debt of Cetcon. The primary obligation between Cetcon and the Bank was guaranteed by the secondary obligation undertaken by Dann. The language of the guaranty supports this interpretation. For instance, the guaranty specifically refers to three parties: the guarantor, identified as the undersigned; the borrower, identified as CETCON CORPORATION/Cathy Towns Dann; and the Bank. There is no contention that Dann, in her individual capacity, is the borrower. Furthermore, the guaranty agreement differentiates between the guarantor and the borrower in other provisions. *See Rockwell Int'l Corp. v. Riddick,* 633 F.Supp. 276, 280 (N.D.Ga.1986) (provisions in the guaranty that differentiate between the

guarantor and the borrower negate contention that the signator signed in his representative capacity). For instance, the guaranty provides that the Bank can proceed against the guarantor without first exhausting its remedies against the borrower. Payment on the debt is deemed to have been made by the borrower unless express written notice is given to the Bank that payment was made by the guarantor. The guaranty further provides that the borrower can execute in favor of the Bank any collateral agreement without impairing or diminishing the guarantor's obligation. To treat Cetcon as the guarantor as well as the borrower would negate the purpose of the guaranty. *American Petrofina,* 519 S.W.2d at 487; *see also Kordick v. Merchant's Nat'l Bank & Trust Co.,* 496 N.E.2d 119, 124 (Ind.App.1986) (it would be meaningless for the corporation to guarantee its own debt because it would add nothing to the existing obligations); *Roy v. Davidson Equip., Inc.,* 423 So.2d 496, 497 (Fla.App.1982) ("For a corporation to guarantee its own debt would add nothing to its existing obligation and would be meaningless."). We conclude, therefore, that Dann signed the guaranty in her individual capacity and that the designation of her corporate capacity was merely descriptio personae. In other words, the addition of the words "president, Cetcon Corporation" to Dann's signature was merely to identify Dann and was not intended to apply in a technical character. *Neeley,* 623 S.W.2d at 948; *American Petrofina,* 519 S.W.2d at 487.

In *American Petrofina,* the court addressed a similar situation in which the guaranty agreement to a corporate debt was signed by two brothers who designated their corporate capacities after their signatures. *American Petrofina,* 519 S.W.2d at 486. The court held the obligations after the signatures to be only descriptio personae. *Id.* at 487. According to the court, there was no ambiguity in the guaranty agreement which clearly set forth the obligations undertaken by the brothers; and, therefore, extrinsic evidence was not admissible to explain or alter its effect.

The court emphasized that the instrument was a collateral undertaking to secure the debt of the corporation, and if it were to hold that it was not the obligation of the brothers, then the effect of the guaranty would be destroyed because such a holding would render the guaranty meaningless. Instead, the court applied the settled rule that some effect, if possible, is to be given to the writing, and a construction which would destroy it is not to be adopted if avoidable. *Id.*

In our view, *American Petrofina* is directly applicable here. Dann signed the guaranty in her individual capacity and promised to pay the debt of Cetcon, the primary obligor. The designation of her corporate capacity was descriptio personae. As in *American Petrofina*, for this Court to hold that she signed in her representative capacity would render the guaranty meaningless. Holding that Dann signed in her individual capacity, however, gives the guaranty its intended effect.

Dann cites *Block v. Aube*, 718 S.W.2d 914 (Tex.App.—Beaumont 1986, no writ), for the proposition that, as a matter of law, when the signature on a guaranty designates the agency of the signator and the principal for whom the agency is exercised, the signator is not individually liable under the terms of the guaranty. The holding in *Block*, however, is not so broad. The issue there was whether a signature which designated the individual signator as the owner as well as the president of a corporation created an individual guaranty of a corporate contract for employment. *Block*, 718 S.W.2d at 914–15. In *Block*, there was no separate guaranty agreement; there was only the employment contract which specifically identified the corporation as being the employer. The *Block* court held that the inclusion of the word "Owner" following the signature, when viewed with the entire contract, did not evidence as a matter of law an intent to create a personal obligation on the part of the signator/owner. *Id.* at 915. *Block* does not address the issue now before us, that issue being whether the designation of a corporate capacity after an individual's signature binds only the corporation despite the fact that the agreement itself evidences an intent to bind the signator in an individual capacity. Dann's reliance upon *Block*, therefore, is misplaced.

■ Dann also contends that she signed in her representative capacity based on section 3.403 of the Texas Business and Commerce Code, which provides that:

§ 3.403. **Signature by Authorized Representative**

(a) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(b) An authorized representative who signs his own name to an instrument

(1) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(2) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(c) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

TEX.BUS. & COM.CODE ANN. § 3.403 (Tex. UCC) (Vernon 1968). The Business and Commerce Code further provides that, when used therein, the term "instrument" means a negotiable instrument. TEX.BUS. & COM.CODE ANN. § 3.102(a)(5) (Tex. UCC) (Vernon 1968). To be a negotiable instrument under the Code, a writing must (1) be signed by the maker or drawer; (2) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except if authorized by

chapter 3 of the Code; (3) be payable on demand or at a definite time; and (4) be payable to order or to bearer. Tex.Bus. & Com.Code Ann. § 3.104(a) (Tex. UCC) (Vernon 1968).

According to Dann, section 3.403 codifies the general rule which should apply to non-negotiable guaranties. We disagree. This guaranty is not a negotiable instrument. *See Cortez v. National Bank of Commerce*, 578 S.W.2d 476, 478 (Tex.App.—Corpus Christi 1979, writ ref'd n.r.e.) (guaranty executed by an individual guaranteeing a corporate debt held not a negotiable instrument and therefore not governed by the Texas Uniform Commercial Code). The guaranty in question here does not specify the amount of the liability to be paid as required in section 3.104. Instead, it provides a ceiling on the amount of the guarantor's obligation. *See Branch Banking & Trust Co. v. Creasy*, 301 N.C. 44, 269 S.E.2d 117, 122 (1980) (a continuing guaranty held not to be a negotiable instrument in part because it did not specify the amount of liability even though it did specify a ceiling on liability). In addition, the guaranty is not payable upon demand or at a definite time as required in section 3.104. Instead, the guarantor's duty of performance is not triggered until the default of the borrower. Furthermore, the guaranty is not payable to order or bearer. *See Branch*, 269 S.E.2d at 122 (the guaranty did not contain any provision that it is "payable to order or bearer").

Citing to *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), Dann contends that section 3.403 applies by analogy to guaranties. In *Gulf & Basco*, however, the court did not expressly extend the provisions of the Texas Uniform Commercial Code to a guaranty. The court had before it the issue of whether a guaranty that did not clearly designate the capacity in which the signator guaranteed payment was ambiguous. In considering this issue, the court referred in a collateral way to the official comment to section 3.403(b), which provides that parol evidence is admissible to prove a signature by an agent in his representative capacity where

a negotiable instrument names the person represented but does not show that the person signed in a representative capacity. *Gulf & Basco*, 707 S.W.2d at 658. Previous to this, however, the court cited to non-UCC principles of law dealing with the execution of agreements. *Id.* at 657–58. For instance, the court noted that there is no clear mode of signature that will absolutely fix or avoid personal liability and that a clear intent within an instrument to bind a party in his individual or corporate capacity will control. *Id.* at 657. The court's reference to the UCC provision was not critical to its holding. Based directly on general principles of contract construction, the court held that the instrument before it was ambiguous because the manner of its execution was susceptible of two different interpretations, both reasonable. In our view, the *Gulf & Basco* decision is not authority for applying section 3.403 to guaranties by analogy, and we decline to so apply this section.

In summary, we conclude that the Bank is entitled to judgment as a matter of law. Accordingly, we overrule Dann's two points of error and affirm the judgment of the trial court.