**Opinion issued August 30, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00099-CV

———————————

**FLAVOR FINISH RESURFACING, L.L.C., Appellant**

**V.**

**JOHN MICHAEL ELLERKAMP, Appellee**

———

**On Appeal from the County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 965467**

———

## MEMORANDUM OPINION

Appellant, Flavor Finish Resurfacing, L.L.C. ("Flavor Finish"), challenges

the trial court's rendition of summary judgment in favor of appellee, John Michael

Ellerkamp, in Flavor Finish's suit for breach of contract and fraud. In three issues,

Flavor Finish contends that the trial court erred in granting Ellerkamp summary judgment.

We affirm in part and reverse and remand in part.

## Background

In its original petition, Flavor Finish alleged that in early 2009, it provided labor and materials for the painting and resurfacing of an apartment complex owned by e2 Real Estate Partners III ("e2 Real Estate"). When e2 Real Estate "failed to pay for all of the services rendered," Flavor Finish filed a mechanic's lien on the real property for the unpaid labor and materials. Ellerkamp, e2 Real Estate's manager, then contacted Flavor Finish about releasing the mechanic's lien. On September 18, 2009, the parties executed two documents: (1) a Loan and Security Agreement ("Loan Agreement") in which e2 Real Estate agreed to pay Flavor Finish in the amount of $12,246 and (2) a Promissory Note − Guaranty ("Note/Guaranty") guaranteeing repayment of the loan to Flavor Finish. Flavor Finish then released the mechanic's lien. e2 Real Estate made three out of twelve payments due under the Loan Agreement before it defaulted.

Flavor Finish further alleged that Ellerkamp signed the Note/Guaranty as a personal guarantor of e2 Real Estate's debt obligation, and it asserted that Ellerkamp and e2 Real Estate should be found jointly liable for the $9,184.50 remaining due under the Loan Agreement. Flavor Finish also alleged that

2

Ellerkamp and e2 Real Estate committed fraud in signing the Note/Guaranty to induce Flavor Finish into releasing the mechanic's lien without any intent to repay the loan. Shortly after Flavor Finish filed suit, e2 Real Estate filed for bankruptcy, and Flavor Finish then dismissed its claims against e2 Real Estate.

In his second amended answer, Ellerkamp asserted that he signed the Note/Guaranty in his representative capacity as an agent of e2 Real Estate and raised the affirmative defense that Flavor Finish's claims are barred under the statute of frauds. Ellerkamp then filed his summary-judgment motion on Flavor Finish's breach-of-contract claim, arguing that there is no writing signed by him in his individual capacity that satisfied the statute of frauds. Ellerkamp also filed a no-evidence summary-judgment motion on the breach-of-contract and fraud claims, arguing that there is no enforceable contract against Ellerkamp in his individual capacity and no evidence that Ellerkamp made a promise or misrepresentation to Flavor Finish.

Ellerkamp attached to his summary-judgment motion both the Loan Agreement and the Note/Guaranty. The signature block in the Loan Agreement was executed as follows:

Borrower: e2 Real Estate Partners, III, L.L.C.

By:            /s/                  Title: Manager, e2 Real
              John M. 'Mike' Ellerkamp            Estate Partners III, L.L.C.

3

The Note/Guaranty contained the same signature block under the section "Guaranty," which is produced below,

## PROMISSORY NOTE - GUARANTY

### FOR VALUE RECEIVED,

The undersigned jointly and severally promise to pay to the order of Flavor Finish, LLC, the sum of twelve thousand two hundred forty six dollars ($12,246.00). (the "principal"), with interest thereon at the rate of five percent (5.00%). Said sum shall be payable as follows:

Interest on the principal balance shall be paid as follows: 1) Twelve equal payments of both principal and interest on the principal balance shall be paid payable monthly at .417% of the unpaid principal balance. Monthly payments will be equal to One Thousand Forty Three dollars and 99/100 per month ($1,043.99) until the principal balance is paid in full.

The undersigned shall have the right to prepay without penalty. Payments not made within 4 days of due date shall be subject to a late charge of .5% of said payment. All payments hereunder shall be made to such address as may from time to time be designated by any holder hereof. In the event any payment due hereunder is not made when due ("default") and remains unpaid as of the tenth calendar day after due, the undersigned expressly agrees and understands that the entire remaining balance of the principal then remaining due shall ACCELERATE, whereby the entire sum shall become immediately due, payable, and collectible.

The undersigned expressly agree that the entire remaining balance of the principal then remaining due shall become immediately due, payable, and collectible for breach of any condition of any security interest, mortgage, pledge agreement or guaranty granted as collateral security for this Promissory Note or breach of any condition of any security agreement or mortgage, if any, having a priority over any security agreement or mortgage on collateral granted, in whole or in part, as collateral security for this Promissory Note or upon the filing by any of the undersigned of an assignment for the benefit of creditors, bankruptcy, or for relief under any provisions of the Bankruptcy Code; or by suffering an involuntary petition in bankruptcy or receivership not vacated within thirty days.

In the event of default, the undersigned agree to pay all reasonable attorney fees and costs of collection. To the fullest extent allowed by law, each maker, surety, guarantor or endorser of this note waives presentation of payment, notice of non-payment, protest and notice of protest and agrees to all extensions, renewals, or release, discharge or exchange of any other party or collateral without notice.

This note shall be:

a. ☒ Unsecured.

b. ☐ Secured with the following collateral:       .

## GUARANTY

FOR VALUE RECEIVED, the undersigned do hereby guarantee payment of the above note and agree to remain fully bound until fully paid.

Signed this date: _Sept 18, 2009_

Borrower: e2 Real Estate Partners III, LLC

By: _____       Title: __Manager, e2 Real Estate Partners III, LLC__
    John M. "Mike" Ellerkamp

4

In its summary-judgment response, Flavor Finish argued that the statute of frauds does not bar its breach-of-contract claim because the plain language of the above quoted documents "contemplate[d] a corporate obligation supported by a personal guaranty, showing the borrower (e2 Real Estate) and the guarantor (Ellerkamp) are separate and distinct parties." Flavor Finish asserted alternatively that the guaranty agreement is ambiguous and parol evidence indicates that Flavor Finish released the mechanic's lien because Ellerkamp personally guaranteed payment of the debt. Flavor Finish further asserted that there is evidence that Ellerkamp committed fraud.

Flavor Finish attached to its summary-judgment response the affidavit of Randy Ross, the managing member for Flavor Finish, who testified that he was contacted by Ellerkamp in reference to e2 Real Estate's outstanding debt. Ellerkamp told Ross that "e2 Real estate was having trouble paying its bills because of a dispute with . . . its insurance company" and he wanted Flavor Finish to release the mechanic's lien "to enable [e2 Real Estate] to secure more financing." Ross was "reluctant to release the lien" and only did so because "Ellerkamp, as an incentive, offered to sign a personal guaranty." Flavor Finish also attached to its summary-judgment response the affidavit of its attorney, Peter Bagley, who testified that he had some communication with Ellerkamp, who "did not refute the idea of a personal guaranty." Bagley explained that eventually

5

"Flavor Finish decided to handle [the] matter by itself," and he was not involved in the actual signing of the Loan Agreement or the Note/Guaranty. Flavor Finish also attached to its response a series of e-mail messages between Bagley and Ellerkamp that referenced a "personal guaranty."

After a hearing, the trial court, without specifying the grounds on which it relied, granted Ellerkamp's summary-judgment motions, ordering that Flavor Finish take nothing on its claims against Ellerkamp.

**Standard of Review**

To prevail on a summary-judgment motion, a movant has the burden of proving that he is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, he must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of his affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.

6

1985).  Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in his favor.  *Id.* at 549.

When a party moves for summary judgment on the ground that there is no evidence of one or more essential elements of the non-movant's claims, the movant must specifically state the elements of the non-movant's claims as to which there is no evidence.  TEX. R. CIV. P. 166a(i); *Spradlin v. State*, 100 S.W.3d 372, 377 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  The burden then shifts to the non-movant to produce evidence that raises a fact issue on the challenged elements. *Spradlin*, 100 S.W.3d at 377.  "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact."  TEX. R. CIV. P. 166a(i).

**Breach of Contract**

In its first two issues, Flavor Finish argues that the trial court erred in granting Ellerkamp summary judgment because "the controlling documents of this case show that Ellerkamp signed a guaranty agreement in his individual capacity" and, if the guaranty agreement is found to be ambiguous, extrinsic evidence demonstrates that Flavor Finish only signed the documents under the assumption that Ellerkamp was a personal guarantor.

In order to establish a breach-of-contract claim, a plaintiff must prove (1) the existence of a valid contract between the plaintiff and the defendant, (2) the

7

plaintiff's performance or tender of performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage as a result of the breach. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Ellerkamp argues that because he did not sign the Note/Guaranty in his individual capacity, there is no valid contract to enforce against him. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(2) (Vernon 2009) (stating that promise by one person to answer for debt of another must be in writing and signed by person to be held to agreement in order to satisfy statute of frauds). Flavor Finish asserts that the plain language of the Note/Guaranty demonstrates a valid contract signed by Ellerkamp in his individual capacity. Flavor Finish alternatively asserts that the Note/Guaranty is at least ambiguous as to whether Ellerkamp signed the document in his representative or individual capacity.

To be enforceable, a contract must use sufficiently certain language to enable a court to determine the rights and responsibilities of the parties. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). Our primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). Usually, the intent of the parties can be

8

discerned from the instrument itself. *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 312 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When an issue regarding the construction of a contract is presented, we must examine and consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345. Contract terms will be given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Dorsett*, 164 S.W.3d at 662.

A contract is ambiguous only if its meaning is uncertain or if it is subject to two or more reasonable interpretations. *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345; *Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 796–97 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). If a written contract is worded in such a way that it can be given a definite or certain legal meaning, then the contract is not ambiguous. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Tex. Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 126 (Tex. 2004). When the parties have entered into an unambiguous contract, the courts will enforce the intention of the parties as written in the instrument. *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981).

In support of its contention that Ellerkamp signed the Note/Guaranty in his individual capacity, Flavor Finish argues that "the fact that a guaranty agreement exists by itself is suggestive that Ellerkamp signed it in his individual capacity." Flavor Finish notes that it would be "superfluous" for e2 Real Estate to sign the "Guaranty" section of the Note/Guaranty as a guarantor of its own debt. Flavor Finish also relies upon Article I of the Loan Agreement, which defines "Borrower" as e2 Real Estate Partners, but more broadly defines "Guarantor" as "without limitation, e2 Real Estate Partners, III, L.L.C., along with each and all of the other guarantors, sureties, and accommodation parties in connection with the Indebtedness." Flavor Finish further asserts that the Note/Guaranty states that the "undersigned jointly and severally" promise to pay the debt, which indicates both a borrower and a separate guarantor. Although the signature block on both the Loan Agreement and the Note/Guaranty contain Ellerkamp's professional title next to his signature, Flavor Finish argues that the appearance of a corporate title is merely descriptio personae, or a term used to identify a person rather than applied in a technical sense. *See, e.g., Neeley v. Intercity Mgmt. Corp.*, 632 S.W.2d 942, 948 (Tex. App.—Houston [1st Dist.] 1981, no writ).

This Court has noted that "there is no clear mode of signature that will absolutely fix or avoid personal liability." *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655, 657 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). In

10

*Buchanan*, Gulf & Basco challenged the trial court's ruling that a guaranty agreement was ambiguous on the issue of whether it was signed by Buchanan in his personal or representative capacity. *Id.* at 656. The guaranty agreement was signed by Buchanan under the handwritten designation, "Alan Buchanan Builders, Inc." *Id.* at 658. We explained that,

> A signature followed by corporate office will result in personal liability where the individual is clearly designated within the instrument as personal surety for the principal. In such case, the corporate office may be construed a *descriptio personae* of the signator rather than indication of the capacity in which he signs.

*Id.* at 657. We held that the guaranty was ambiguous as to whether it was signed in a representative or individual capacity and affirmed the trial court's ruling. *Id.* at 659.

Here, looking only at the four corners of the controlling documents, we conclude that the agreement is ambiguous as to whether Ellerkamp signed them in his representative or individual capacity. Although the signature block contains Ellerkamp's corporate title, this, by itself, does not necessarily indicate that he signed in a representative capacity; at the same time, the documents lack the personal pronouns that generally establish an individual guaranty as a matter of law. *See, e.g., Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 258–60 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding document was signed in individual capacity, despite use of corporate letterhead and title in signature, where

11

language "I, personally, guaranty" all liabilities of corporation unambiguously indicated personal guaranty); *Taylor-Made Hose, Inc. v. Wilkerson*, 21 S.W.3d 484, 488–89 (Tex. App.—San Antonio 2000, pet. denied) (holding credit application that stated defendant "personally agreed" to pay on corporation's delinquent account indicated defendant was individually liable on corporate debt, despite use of corporate title in signature); *Am. Petrofina Co. of Tex. v. Bryan*, 519 S.W.2d 484, 487–88 (Tex. Civ. App.—El Paso 1975, no writ) (holding separate guaranty agreement that stated, "I covenant and agree that jointly with the Principal and severally I shall be liable and responsible" for corporate debt clearly indicated personal guaranty, despite use of corporate title in signature).

Although the Note/Guaranty contains no personal pronouns, there is also language in it that indicates a personal guaranty. For example, the Loan Agreement defines "Borrower" exclusively as e2 Real Estate, but broadly defines "Guarantor" to include "without limitation, e2 Real Estate Partners . . . along with each and all of the other guarantors." The Loan Agreement further makes reference to "joint and several liability." More importantly, the Note/Guaranty itself begins with, "The undersigned jointly and severally promise to pay the debt." The reference to "joint and several liability" indicates that multiple parties were intended to be liable on the debt, which is consistent with Ellerkamp's individual guaranty. Furthermore, in the Note/Guaranty, the "undersigned" is always

12

accompanied by a plural verb. For example, the document states that, "[t]he undersigned . . . promise to pay," "the undersigned expressly agree," and "the undersigned do hereby guarantee payment."

In addition, the mere fact that there is a guaranty in the first place indicates that Ellerkamp, individually, was intended to be the guarantor. "A guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform." *Dann v. Team Bank*, 788 S.W.2d 182, 183 (Tex. App.—Dallas 1990, no writ). "A guaranty requires three parties because it creates a secondary obligation whereby the guarantor promises to answer for the debt of another." *Id.* at 184. "Under normal circumstances, a written collateral undertaking to secure a corporate debt will be rendered meaningless if the primary debtor is found to be the sole party liable thereunder." *Id.*; *see also Eubank v. First Nat'l Bank of Bellville*, 814 S.W.2d 130, 133–34 (Tex. App.—Corpus Christi 1991, no writ) ("To treat [the corporation] as the guarantor as well as the borrower would negate the purpose of the guaranty."); *Am. Petrofina*, 519 S.W.2d at 487 ("This instrument is a collateral undertaking to secure the debt of the corporation and if we were to hold that this is not the obligation of the [a]ppellees we would have to hold that it is not an obligation at all, and we would utterly destroy its effect."). It is a well-accepted rule of contract construction that a court should attempt to give effect to all the

provisions of the contract so that none will be rendered meaningless. *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345.

In support of the proposition that the signature block utilized in this case alone establishes, as a matter of law, that Ellerkamp signed the documents in his representative capacity only, he relies upon *Suttles v. Thomas Bearden Co.*, 152 S.W.3d 607 (Tex. App.—Houston [1st. Dist.] 2004, no pet.). In *Suttles*, this Court concluded that the signature block on a promissory note unambiguously established that the note was signed only in a representative capacity. *Id.* at 614. The defendant had signed the promissory note under the printed designation, "Tracy Suttles, President," and under a handwritten amendment at the bottom of the page, "Tracy Suttles." *Id.* at 610. We noted that for a negotiable instrument, if a signature "shows unambiguously that [it] is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument." *Id.* at 611–12 (quoting TEX. BUS. & COM. CODE ANN. § 3.402(b)(1) (Vernon 2003)). However, a person signing an instrument is presumed to be an "accommodation party" if the signature is "accompanied by words indicating the signer is acting as a surety or guarantor with respect to the obligation of another party in the instrument." TEX. BUS. & COM. CODE ANN. § 3.419(c) (Vernon Supp. 2011). In *Suttles*, the defendant signed only a promissory note and there was no guaranty language to be found anywhere in the document. 152 S.W.2d at 609. By

14

contrast, in the instant case, both the Loan Agreement and the Note/Guaranty include language consistent with a guaranty agreement, as opposed to a bare promissory note, and Ellerkamp signed the Note/Guaranty under the section entitled "Guaranty," which itself indicates the liability of a third party. *See, e.g., Dann*, 788 S.W.2d at 183.

As a result, we cannot conclude that, as a matter of law, the signature blocks at issue in this case unambiguously establish that Ellerkamp signed the documents only in his representative capacity. At the same time, because the documents do not include the use of personal pronouns, the words "personal" or "personally," or an express mention of Ellerkamp as individual guarantor, we cannot conclude that he unambiguously signed the documents in his personal capacity either. Instead, the representative structure of the signature block, combined with the use of the words "jointly and severally," the treatment of the "undersigned" as plural, and the existence of a guaranty agreement, creates an ambiguity as to whether Ellerkamp signed the Note/Guaranty in his representative or individual capacity.

Ellerkamp argues that, even if the Note/Guaranty is construed as an individual guaranty, it would be barred by the statute of frauds because he is not expressly named as the guarantor. He asserts that the statute of frauds requires "a written memorandum which is complete within itself in every material detail," citing *Cohen v. McCutchin*, 565 S.W.2d 230 (Tex. 1978). However, in *McCutchin*,

the court held that a letter did not satisfy the statute of frauds because it was not signed by the deceased and did not disclose his identity. *Id.* at 232. Here, the document is signed by the only party that could be an individual guarantor, Ellerkamp, in a guaranty agreement that applies to "the undersigned." This is sufficient to satisfy the statute of frauds. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a)(2) (stating that promise is not enforceable unless it is "signed by the person to be charged with the promise or agreement").

Accordingly, we hold that the trial court erred in granting summary judgment in favor of Ellerkamp. There is a genuine issue of material fact regarding what the parties intended the guaranty agreement to reflect. *See, e.g., Lewis v. Vito, S.A.*, No. 01-05-00367-CV, 2006 WL 1767138, at *3 (Tex. App.— Houston [1st Dist.] June 29, 2006, no pet.) (mem. op.) ("As a general rule, ambiguity in an agreement presents a fact question that precludes the granting of summary judgment."); *Gulf & Basco*, 707 S.W.2d at 658 (holding, in bench trial, that trial court did not err in conducting hearing to determine parties' intent regarding capacity of signator where "the manner of execution [was] susceptible of two different and reasonable interpretations").

We sustain Flavor Finish's second issue.

Within its third issue, Flavor Finish also argues that the trial court erred in granting Ellerkamp's no-evidence summary-judgment motion with respect to its

16

breach-of-contract claim. Having held that there is genuine issue of material fact as to whether Ellerkamp signed the documents in his individual capacity, we sustain Flavor Finish's third issue as well regarding his breach-of-contract claim.

**Fraud**

In its third issue, Flavor Finish argues that the trial court also erred in granting Ellerkamp's no-evidence summary-judgment motion because Flavor Finish "presented more than a scintilla of evidence" for each element of its claim of fraud.

To establish a claim for fraud, a plaintiff must prove that the defendant made a material misrepresentation, which the defendant knew was false or made recklessly without any knowledge of its truth, with the intent that it should be acted upon by the plaintiff, and the plaintiff actually relied on the misrepresentation and suffered injury. *In re FirstMerit Bank, N.A* ., 52 S.W.3d 749, 758 (Tex. 2001).

An action for fraud pertaining to a promise of future performance requires, as relevant here, a showing that the promisor, at the time that the promise was made, had no intention of performing the act. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors*, 960 S.W.2d 41, 47 (Tex. 1988). The mere failure to perform under a contract does not constitute sufficient evidence of fraud. *Id.* at 48. Rather, a plaintiff alleging a fraud claim must demonstrate that the defendant, at the time that he or she made the representation, had intent to deceive

17

and had no intent to perform; the evidence presented must be relevant to the promisor's intent at the time that the representation was made. *Id.* However, "[w]hile a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made. . . . 'Slight circumstantial evidence' of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434–35 (Tex. 1986) (quoting *Maulding v. Niemeyer*, 241 S.W.2d 733, 737 (Tex. Civ. App.—El Paso 1951) (orig. proceeding)).

Flavor Finish asserts that Ellerkamp made a material representation that he knew was false when he represented that he would provide a personal guaranty. However, Flavor Finish presented no evidence that, at the time of the representation, Ellerkamp knew it to be false or had no intention of performing the act. Its only evidence is that Ellerkamp had "offered to sign a personal guaranty" to Ross and discussed a personal guaranty with Bagley via e-mail. However, Ross continued to say that he "concluded the negotiations" without Bagley; thus, Ellerkamp's representation was merely a statement made during negotiations prior to the signing of the Note/Guaranty. There is no indication that, at the time of the representation, Ellerkamp knew it to be false or misrepresented the terms of the contract he drafted after subsequent negotiations. Accordingly, we hold that the

18

trial court did not err in granting Ellerkamp summary judgment on Flavor Finish's claim for fraud. *See In re FirstMerit Bank*, 52 S.W.3d at 758 (holding there was no evidence to support claim for fraud where the only alleged misrepresentations were during prior negotiations and there was no evidence defendants "actually misrepresented the [contract's] terms . . . or that they made any false material representations with regard to the [contract] itself").

We overrule Flavor Finish's third issue regarding its claim for fraud.

## Conclusion

We affirm the portion of the trial court's judgment concerning Flavor Finish's fraud claim. We reverse the portion of the trial court's judgment concerning Flavor Finish's breach-of-contract claim, and we remand this claim to the trial court for further proceedings consistent with this opinion.

Terry Jennings
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

19